■ ADAM IPPOLITO, Appellant-Respondent, et al., Plaintiffs, v YOKO O. LENNON, Respondent-Appellant.—Order of the Supreme Court, New York County (Harold Baer, Jr., J.), entered September 19, 1988, resettling an order entered March 22, 1988 which, *inter alia,* granted defendant's motion to dismiss pursuant to CPLR 3211 (a) (7) as to plaintiff-appellant's second and fourth causes of action and denied the motion as to the first and third causes of action, unanimously modified, on the law, without costs, to the extent of reinstating so much of the fourth cause of action as states a claim for unfair competition (palming off), and otherwise affirmed.

Plaintiff, Adam Ippolito, a professional musician and keyboard player, performed in two August 30, 1972 rock concerts at Madison Square Garden which were organized to benefit the children at Willowbrook Hospital, a facility for the developmentally disabled. He appeared as part of the group known as the Plastic Ono Elephant's Memory Band (POEM), the

back-up group for John Lennon and defendant Yoko Ono Lennon at the concerts. The concerts were organized by the Lennons, who were featured performers, and filmed by Joko Film Inc., a company owned by the Lennons. This film was broadcast as a television special on ABC in December 1974, proceeds from which were also applied to benefit the children at Willowbrook.

In 1985, some 13 years after the original benefit concerts, defendant delivered the film and soundtrack to Capitol Records and Sony Corporation, which released a record album and video cassette, and to Showtime/The Movie Channel, Inc., which broadcast the film on cable television in March 1986. The complaint states that the material was copyrighted by Capitol Records in 1985. Both Ippolito and defendant are listed on the album and videocassette covers as keyboard performers. However, the complaint charges that while "Yoko Ono is on camera in the video almost exclusively with the exception of approximately ten seconds during which time the plaintiff, Adam Ippolito, is shown playing the piano * * * the piano music was entirely produced by Adam Ippolito while Yoko Ono is shown throughout the video tape feigning a performance on the piano." The complaint asserts four causes of action based upon the premise that Ippolito's services were donated solely for charitable, and not commercial, purposes: (1) that the use of Ippolito's name and image for commercial purposes violates his right of privacy under section 50 of the Civil Rights Law and entitles him to damages pursuant to section 51 of that statute; (2) that delivery of the film and soundtrack to Capitol Records and Sony Corporation constitutes conversion of plaintiff's property rights to his performance therein; (3) that defendant's representations that the concerts were entirely for charitable purposes were fraudulent; and (4) that misrepresenting Ippolito's performance as her own constitutes misappropriation and the unfair trade practice of "palming off". For these various causes of action, plaintiff Ippolito seeks damages in the amount of $40,000,000 together with exemplary damages in the amount of $30,000,000. In an order entered September 19, 1988, the IAS court consolidated a parallel action brought by the other musicians in POEM with the action brought by plaintiff Ippolito.

Defendant moved to dismiss the complaint for failure to state a cause of action (CPLR 3211 [a] [7]). Her moving papers allege: (1) that plaintiff Ippolito disposed of his rights in his performance and that the references to his name in any advertising or promotional material are merely incidental and

not within the scope of the Civil Rights Law; (2) that plaintiff Ippolito's contract indicates that any property interest in his performance was waived in consideration of the payment of union-scale wages; (3) that the claim of fraud is not pleaded with particularity pursuant to CPLR 3016 (b); and (4) that inclusion of Ippolito's name in the credits obviates the claim of "palming off". The IAS court granted the motion with respect to the second cause of action for conversion and so much of the fourth cause of action as alleges misappropriation on the ground that such claims are preempted by Federal Law. That portion of the fourth cause of action which alleges palming off was dismissed on the ground that it is insufficiently pleaded on its face. The IAS court denied the requested relief as to the first and third causes of action for violation of civil rights and fraud. Plaintiff Ippolito appeals from the partial dismissal of his complaint and defendant cross-appeals from denial of the relief sought as to the remainder of the complaint.

The function of a court on a motion to dismiss addressed to the pleadings is quite narrow. The material allegations of the complaint are deemed to be true, plaintiff is given the benefit of every possible favorable inference and the nature of the inquiry is whether a cause of action exists, not whether it has been properly stated (*Arrington v New York Times Co.*, 55 NY2d 433; *Rovello v Orofino Realty Co.*, 40 NY2d 633; *Cohn v Lionel Corp.*, 21 NY2d 559).

Although it is not apparent either from the complaint or the contentions of the parties, the gravamen of this action is simply a suit for breach of contract. In essence, plaintiff Ippolito contends that he agreed to participate in the subject concerts with the understanding that there would be no commercial exploitation of the programs. Defendant breached that agreement by delivering the audio and film recordings of the concerts, presumably for a suitable fee, to Capitol Records and Sony Corporation for commercial distribution. The enumerated causes of action set out in the complaint are merely an attempt to gild the lily, and the absence of merit to any or all of them will not operate to deprive plaintiff Ippolito of the opportunity to present his case.

Examining the particular causes of action asserted, it is clear that the claims for conversion and misappropriation assume that Ippolito retains an interest in his performance of August 30, 1972. Whatever the merit to this contention, the interest asserted is decidedly intangible, and this State does not generally recognize a cause of action for conversion of

intangible property *(Sporn v MCA Records,* 58 NY2d 482, 489). Even under an expanded definition of the tort, conversion is limited to those intangible property rights customarily merged in, or identified with, some document (Prosser and Keeton, Torts, at 91-92 [5th ed 1984]; Restatement [Second] of Torts §§ 222 A, 242 [1965]). Where the scope of the action has been expanded further, it has come about as the result of legislation *(see, e.g., Lone Ranger Tel. v Program Radio Corp.,* 740 F2d 718 [9th Cir 1984], citing Cal Civ Code § 980 [a] [2]). It is therefore unnecessary to reach the issue of whether a cause of action afforded by State law is preempted by Federal law (17 USC § 301) or whether plaintiff Ippolito retains any intangible right to his performance as opposed to any substantive right to the fixing of that performance in "a tangible medium of expression" (17 USC § 301 [a]), viz., the film and sound recordings of the performance *(see, Baltimore Orioles v Major League Baseball Players Assn.,* 805 F2d 663 [7th Cir 1986], *cert denied* 480 US 941 [1987]).

The first cause of action for invasion of privacy was properly sustained. Ippolito alleges that his name and picture were used for purposes of trade without his written consent. Assuming, as we must, the allegation to be true *(Kober v Kober,* 16 NY2d 191, 193), the pleaded cause of action is squarely within the scope of Civil Rights Law § 51. Whether, as defendant asserts, Ippolito has disposed of his rights pursuant to the statute or whether defendant is otherwise exempt from operation of the statute raise issues of fact which cannot be summarily resolved.

A similar analysis may be applied to the cause of action for fraudulent misrepresentation. Ippolito alleges he was induced to perform because of defendant's representation that no commercial use would be made of his performance. An action for fraud requires that the plaintiff demonstrate the making of a material misrepresentation, known to be false, made with the intention of inducing reliance on the part of the victim, on which the victim does in fact rely and, as a result of which, he sustains damages. The possibility that Ippolito may have been induced to perform for wages (union scale) rather than charitable inclinations and the difficulty of proving that defendant, 13 years before the fact, knew that the concerts would be exploited for commercial purposes do not enter into the consideration of whether the pleading is sufficient.

As to the question of the cause of action for unfair competition, denominated as "palming off", we agree with the IAS court that it presents some difficulties. In the realm of enter-

tainment media, where the use of stand-ins, stunt doubles, voice overs and lip syncing is commonplace, there is some reluctance to create a cause of action arising out of such activity. It is especially troublesome that plaintiff acknowledges his awareness of, and willing participation in, the complained-of charade. Moreover, as plaintiff points out in his brief, the essence of palming off is the confusion which might be engendered from representing another's work product as one's own *(Shaw v Time-Life Records,* 38 NY2d 201, 206). It is therefore difficult to discern how plaintiff was any less damaged by national broadcast of the concert film in December 1974 than by its commercial cable broadcast in March 1986. However, it seems to us that if it were Adam Ippolito who had feigned performance while John Lennon actually played the piano, there is no doubt that, under the authority of *Shaw v Time-Life Records (supra),* relied upon by the court, a cause of action would lie. As the Court of Appeals stated in that case, "Time-Life could not 'palm-off' its records as being the personal work of [Artie] Shaw, or, for that matter, the work of any of the other artists whose arrangements were copied by Time-Life" (38 NY2d 201, 206, *supra).*

In the context of the instant case, much depends on the agreement between plaintiff and defendant as to the use which was to be made of plaintiff's performance and its very nature, whether as a performance by Ippolito in his own right or as a piano double for Yoko Ono Lennon. For purposes of a motion to dismiss, the credibility of the parties is not under consideration *(Capelin Assocs. v Globe Mfg. Corp.,* 34 NY2d 338) and plaintiff's statements in opposition to the motion are accepted as true *(Patrolmen's Benevolent Assn. v City of New York,* 27 NY2d 410, 415). That plaintiff was given credit for performing in the concert does not necessarily justify the portrayal of his playing as the work of defendant. Therefore, that portion of the fourth cause of action which states a claim for unfair competition (palming off) should be reinstated. Concur—Ross, J. P., Carro, Asch, Smith and Rubin, JJ. *[See,* 139 Misc 2d 230.]