OPINION OF THE COURT
Joan B. Lobis, J.
The primary issue to be determined on this motion is whether there is any statutory or common-law claim for imitation of a voice. Plaintiff performed the voice of "Punchy” for many years on the Hawaiian Punch television commercials. He now claims that defendants imitated his voice in subsequent commercials without his consent. Plaintiff has also asserted a claim under section 296 of the New York Executive Law alleging discrimination by reason of disability. Defendants have made a motion for summary judgment to dismiss the entire complaint. For the reasons stated below, plaintiffs common-law claims for unjust enrichment, misappropriation, and conversion are dismissed. However, defendants’ motion for summary judgment dismissing plaintiffs claim under the New York Executive Law is denied as there are disputed issues of fact.
The relevant facts are as follows. The character "Punchy” is a registered trademark of Hawaiian Punch. The characters of "Punchy” and the "Oaf’ were developed by an advertising agency for the original manufacturer of Hawaiian Punch in December of 1961. The first voice of "Punchy” was performed by Ross Martin, who is now deceased. Plaintiff was the second voice of "Punchy” and performed the voice-over for the Ha *456 waiian Punch commercials for many years. Prior to the events at issue, the last time plaintiff performed the voice-over for the Hawaiian Punch commercial was in 1980. "Punchy” is one of thousands of characters whose voices the plaintiff has portrayed over the years in radio and television commercials.
When the defendant Proctor & Gamble Company acquired Hawaiian Punch in 1990, it decided to resume the use of "Punchy” and the "Oaf’ in television commercials and it hired the defendant N.W. Ayer, Inc. (Ayer). Jerry Rice, an employee of Ayer, was in charge of producing the new Hawaiian Punch commercial. According to Rice’s testimony, he learned several days prior to the recording session for the commercial that plaintiff had done the voice-over for "Punchy” in the past. When Rice discovered this information, he asked the casting department to contact plaintiff’s agent to see if he was available for the recording session. The parties dispute whether Rice knew that plaintiff used a wheelchair when Rice decided to contact plaintiff. After negotiations took place between plaintiff and Ayer, it was agreed that plaintiff would perform in the commercial doing the voice-over for "Punchy” and would receive single scale with a $2,500 guarantee per cycle. The contract specifically provided that "performer acknowledges that performer has no right, title or interest of any kind or nature whatsoever in or to the commercial(s), a role owned or created by the producer belonging to producer and not performer.” After the television commercial was produced, Proctor & Gamble Company asked Ayer to produce new advertisements featuring "Punchy” and the "Oaf’. When Rice commenced auditions for the next "Punchy” commercial, he did not ask plaintiff to audition for the voice-over for "Punchy”. Instead, plaintiff claims that Rice auditioned other voice-over performers and asked them to imitate plaintiff’s characterization and voice of "Punchy”.
Plaintiff subsequently filed suit alleging both handicap discrimination because of physical disability and imitation of his voice. The complaint asserts four causes of action: unlawful discriminatory practices pursuant to New York Executive Law § 296, unlawful and tortious appropriation of plaintiff’s property rights, conversion, and unjust enrichment and deception of the public through defendants’ imitation of plaintiff’s voice.
Plaintiff’s common-law claims for unjust enrichment, misappropriation and conversion are dismissed. All of these claims are based on plaintiff’s assertion that his voice has been imitated by defendants without his consent. No other attrib *457 ute or property of plaintiff is at issue in these claims. Unlike names or images, New York has not yet recognized a remedy for voice imitation.
Plaintiff cannot state a statutory claim under the Civil Rights Law for imitation of his voice. The courts have consistently held that there is no cause of action under sections 50 and 51 of the Civil Rights Law for misappropriation or imitation of a voice. (See, Tin Pan Apple v Miller Brewing Co., 737 F Supp 826 [SD NY 1990]; Lahr v Adell Chem. Co., 300 F2d 256 [1st Cir 1962].) In Tin Pan Apple, the court specifically held that sections 50 and 51 of the Civil Rights Law do not cover sound alike claims. According to the court, "[t]he statute extends the right of privacy to an individual’s 'name, portrait or picture’.” (Supra, at 837.) However, there is no provision in the statute regarding the imitation of one’s voice. Thus, the Legislature made a determination that claims based on imitation of voice do not state a claim under the New York Civil Rights Law. Similarly, in Lahr, the First Circuit held that defendants’ copying of plaintiff’s distinctive voice in a commercial featuring a cartoon duck did not state a claim under the Civil Rights Law. Thus, plaintiff does not have any statutory claim based on the imitation of his voice.
Nor can plaintiff state a common-law claim for imitation of his voice. The reason that the Legislature enacted sections 50 and 51 of the Civil Rights Law was because there is no common-law right of privacy or common-law action for infringement of the rights of publicity in New York. (See, Stephano v News Group Publs., 64 NY2d 174 [1985]; Arrington v New York Times Co., 55 NY2d 433 [1982].) Because the right to protect one’s personality was unknown in the common law, legislative enactments have been necessary to create remedies for unauthorized use of an individual’s name or image. As a result, the sole remedy for a plaintiff who claims that his or her likeness or name has been used without his or her consent is an action pursuant to sections 50 and 51 of the Civil Rights Law. (Stephano v News Group Publs., 64 NY2d, supra, at 182-183.) If plaintiff’s claim does not fall within the parameters of the Civil Rights Law, he or she cannot rely on the common law to establish a claim based on the use of name or likeness without consent. (Arrington v New York Times Co., 55 NY2d, supra, at 439-440.)
Thus, the courts have consistently dismissed common-law claims for misappropriation, conversion, unfair competition and unjust enrichment based on an unauthorized use of an *458 attribute of identity. For example, in Preston v Martin Bregman Prods. (765 F Supp 116 [SD NY 1991]), the court dismissed plaintiff’s common-law claim for conversion based on defendant’s unauthorized use of her picture on the ground that plaintiff’s remedy was limited to sections 50 and 51 of the Civil Rights Law. The court reasoned that plaintiff’s conversion claim was "in law a privacy claim, since it is based on the commercial use of plaintiff’s image without her consent. It does not exist, other than under the Civil Rights Law.” (Supra, at 120.) The court also noted that any intangible property right that plaintiff has in her image is incapable of being converted under New York law. See also, Ippolito v Lennon (150 AD2d 300 [1st Dept 1989]), where the First Department held that there is no cause of action for conversion of intangible property such as rights in a performance.
Similarly, it has been held that a plaintiff does not have a cause of action for a quasi-contract claim such as unjust enrichment based on the unauthorized use of her name. The plaintiff’s sole remedy in such a situation is an action under sections 50 and 51 of the Civil Rights Law and the alleged unjust enrichment of the defendant is part of that cause of action. (See, Bunnell v Keystone Varnish Co., 254 App Div 885 [2d Dept 1938].)
Finally, in a case strikingly similar to the present one, the Southern District has held that there is no common-law claim for unfair competition based on imitation of a voice. (See, Booth v Colgate-Palmolive Co., 362 F Supp 343 [SD NY 1973].) The plaintiff in that action, Shirley Booth, played the role of "Hazel” in a popular television comedy series broadcast from 1961 through 1966. The series was based on the adventures of a copyrighted cartoon character named "Hazel”. The defendant in that action was an advertising agency which produced radio and television commercials promoting Colgate’s laundry detergent "Burst”. The commercials used the name and likeness of the copyrighted cartoon character named "Hazel” pursuant to the agreement with the copyright holder. The voice in the commercial was performed by an actress other than plaintiff. Plaintiff sued defendant on the ground that she endowed the role of "Hazel” with her own unique creative artistic interpretation and that she should be protected against the imitation of her voice in defendant’s commercial. For the purposes of the motion, it was not disputed that the voice of the actress who played "Hazel” in the commercial constituted an imitation of plaintiff’s voice as she used it in *459 the "Hazel” comedy series. The court granted summary judgment dismissing plaintiffs claim on the ground that imitation by defendant of plaintiffs voice without more does not constitute unfair competition under New York law. The court also rejected plaintiffs claim that her voice had acquired a secondary meaning. Based on the foregoing cases, there are no grounds for plaintiffs common-law causes of action based on imitation of his voice.
Defendants have also made a motion for summary judgment to dismiss plaintiffs employment discrimination claim. According to defendants, they are entitled to summary judgment because the undisputed facts establish that the reason plaintiff was not hired for the second commercial was because of his own initial demand for double scale, the extended negotiations for extra money, and his request to perform the voice-over for both "Punchy” and the "Oaf’. Plaintiff argues that the foregoing are simply excuses created by defendants after this lawsuit was commenced to justify the prejudiced behavior of their producer. According to plaintiff, defendants refused to rehire him to do the voice-over for "Punchy” because the producer of the commercials, Mr. Rice, was prejudiced against people in wheelchairs. Plaintiff alleges that when he arrived at the studio to do the voice-over, he had to pass Rice to reach the performance booth and that when Rice had to move his chair, he folded his arms across his chest and let out a sigh.
Plaintiff has submitted evidence that he was willing to work on the second commercial for regular scale and was willing to not play the part of the "Oaf’ on the second commercial and that he conveyed this information to defendants. Moreover, there is no evidence that defendants ever offered to let plaintiff play "Punchy” in the second commercial on the condition that he accept scale and not make any additional demands. To the contrary, the evidence is that they never contacted him to audition for the second commercial. The resolution of why defendants refused to rehire plaintiff— whether because of his extra demands or because the producer was prejudiced against handicapped people — involves disputed factual issues inappropriate for summary judgment.
Defendant also argues that the discrimination claim should be dismissed as against Proctor & Gamble Company because Proctor & Gamble was not plaintiffs employer. This argument is rejected. It is undisputed that Proctor & Gamble had the *460 power and authority to both hire and fire the person who is employed to perform the voice-over for the commercial. This is sufficient control to make Proctor & Gamble an employer of plaintiff. (See, Matter of Holmes v New York State Human Rights Appeal Bd., 93 AD2d 967 [3d Dept 1983].)