460 F.3d 400
 Louis E. THYROFF, Plaintiff-Appellant,
v.
NATIONWIDE MUTUAL INSURANCE COMPANY, Nationwide Mutual Fire Insurance Company, Nationwide Life Ins., Nationwide General Insurance Company, Nationwide Property and Casualty Company, Nationwide Variable Life Insurance and Colonial Insurance Company of Wisconsin, Defendants-Appellees.
No. 05-4005-CV.
 United States Court of Appeals, Second Circuit.
 Argued: April 11, 2006.
 Decided: August 21, 2006.
 
 William P. Tedards, Jr., Washington, D.C. (Leo G. Finucane, Finucane & Hartzell, LLP, Pittsford, NY, on the brief), for Plaintiff-Appellant.
 Ben M. Krowicki, Bingham McCutchen LLP, Hartford, CT, for Defendants-Appellees.
 Before WINTER, CALABRESI, POOLER, Circuit Judges.
 POOLER, Circuit Judge.
 
 
 1
 Plaintiff-appellant Louis E. Thyroff appeals from an adverse disposition of his case in which the United States District Court for the Western District of New York (Telesca, J.) dismissed his claims for conversion and breach of contract. In an unpublished opinion, the district court dismissed the former upon defendants-appellees' motion to dismiss and the latter on its motion for summary judgment. Thyroff now challenges both of these decisions.
 
 
 2
 The correctness of the district court's dismissal of Thyroff's conversion claim turns on an issue of New York law on which the New York Court of Appeals has not yet ruled. Specifically, Thyroff claims that defendants-appellees Nationwide Mutual Insurance Company et al. (collectively, "defendants") converted his electronic data, and he is therefore entitled to relief under New York law. It is unclear, however, whether electronic data may be the subject of a conversion claim under New York law. Compare Sporn v. MCA Records, Inc., 58 N.Y.2d 482, 489, 462 N.Y.S.2d 413, 448 N.E.2d 1324 (1983) (noting that "an action for conversion will not normally lie, when it involves intangible property") with Shmueli v. Corcoran Group, 9 Misc.3d 589, 594, 802 N.Y.S.2d 871 (N.Y.Sup.Ct.2005) (holding that plaintiff's computerized client list is property that may support a claim of conversion). Because this precise issue is unaddressed by the New York Court of Appeals and is controlling in the disposition of Thyroff's conversion claim, we certify the question—whether electronic data may be the subject of a conversion claim—to the New York Court of Appeals.
 
 
 3
 As to Thyroff's breach-of-contract claim, however, we affirm the decision of the lower court because we agree that Thyroff has failed to satisfy the burden necessary to bring this claim to trial. We reject Thyroff's position that the expiration of the contract's non-compete clause created an affirmative contractual obligation requiring that defendants provide Thyroff the materials necessary to compete.
 
 
 4
 We therefore affirm in part the decision of the district court regarding the dismissal of Thyroff's breach-of-contract claim, and we certify the above-described question to the New York Court of Appeals. We retain jurisdiction over the case to decide the appeal on the conversion claim after we have learned the views of the New York Court of Appeals or that court declines certification.
 
 BACKGROUND
 
 5
 Thyroff was associated with Nationwide Mutual Insurance Company ("Nationwide") as an insurance agent for twenty one years. Pursuant to this relationship, on October 13, 1988, Thyroff and Nationwide entered into an Agent's Agreement ("AA"), which governed the relationship between the parties. One section of the AA, 11(f), is relevant to the instant appeal.
 
 
 6
 Section 11(f) covers "[c]essation of [a]gency [s]ecurity [c]ompensation" and is, in part, a type of non-compete clause. According to 11(f)(1), if an agent is in any way connected "with the fire, casualty, health, or life insurance business, within one year following cancellation [of the agent relationship] within a 25 mile radius of [the agent's] business location," any obligation that Nationwide may have to provide "Agency Security Compensation"[1] terminates.
 
 
 7
 In addition to requiring that Thyroff enter into the AA, Nationwide also required that Thyroff lease an agency office-automation system ("AOA"), including hardware and software, from Nationwide. Thyroff signed a lease agreement and paid monthly lease payments for the use of this system. Thyroff's office operations were very much dependent on the AOA. On a daily basis, Thyroff and his staff entered business data and information onto the hard drives of the AOA computers. Nationwide then uploaded that information on a nightly basis from Thyroff's computers onto Nationwide's computers. In the process, Nationwide also uploaded Thyroff's personal information, which was unrelated to Nationwide business.
 
 
 8
 On September 18, 2000, Thyroff received a letter cancelling the AA. On September 19, 2000, without notice, Nationwide denied Thyroff access to the AOA as part of the cancellation of the AA, and it reclaimed its AOA. In the process, Nationwide took various software programs—including Microsoft Word, PowerPoint, Excel, etc.—and various files—including personal email, documents, and assorted data—that Thyroff stored on the system. Nationwide also seized data that Thyroff had compiled on Nationwide customers that Thyroff needed in order to retain his customers' business once his relationship with Nationwide ended.
 
 
 9
 According to Thyroff's complaint, Nationwide was not entitled to take his personal or business information from the computers. Thyroff maintains that neither the AOA lease agreement nor the AA granted Nationwide this right. Nationwide's seizure of this electronic information—both Thyroff's business records and personal information—forms the basis of Thyroff's conversion claim.
 
 
 10
 The seizure of the business records alone is the basis for Thyroff's breach-of-contract claim. According to Thyroff, section 11(f) dictates that an agent must not compete for one year following the termination of the AA, but after this year, the agent is free to compete. Thyroff maintains that this, along with the implied covenant of good faith and fair dealing, see 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 773 N.E.2d 496 (2002) (noting that all contracts under New York law include this implied covenant), created a contractual obligation for Nationwide not to deprive Thyroff access to business information necessary to compete once the year expired. Under this theory, when Nationwide seized its policyholder information from the AOA without first providing Thyroff an opportunity to duplicate it, it interfered with Thyroff's ability to compete and therefore breached the contract.
 
 
 11
 The district court disagreed, dismissing both the conversion claim and breach-of-contract claim. The instant appeal ensued.
 
 DISCUSSION
 I. The Conversion Claim
 
 12
 The district court dismissed Thyroff's conversion claim upon defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). We review the court's decision on a motion to dismiss de novo, examining all facts and drawing all inferences in plaintiff's favor. Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir.2000). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." Id.
 
 
 13
 We apply New York law to Thyroff's conversion claim. According to New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Vigilant Ins. Co. of Am. v. Hous. Auth., 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995) (internal quotation marks omitted). This includes a "denial or violation of the plaintiff's dominion, rights, or possession" over her property. Sporn, 58 N.Y.2d at 487, 462 N.Y.S.2d 413, 448 N.E.2d 1324. It also requires that the defendant exclude the owner from exercising her rights over the goods. New York v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249, 259, 746 N.Y.S.2d 637, 774 N.E.2d 702 (2002).
 
 
 14
 The district court found that Thyroff failed to state a claim for the conversion of any personal data because Thyroff did not allege that Nationwide exercised dominion over that data to the exclusion of Thyroff. It also found that Thyroff failed to state a claim for the conversion of any business records on the AOA because Nationwide owns the AOA.
 
 
 15
 We disagree. We turn first to Thyroff's personal records, files, and programs. The complaint alleges that Nationwide denied Thyroff access to the AOA and has continued to retain possession of Thyroff's personal information. The complaint also alleges that this is property that Nationwide unlawfully took, and it cannot be replaced. In Sporn, 58 N.Y.2d at 488, 462 N.Y.S.2d 413, 448 N.E.2d 1324, the New York Court of Appeals explained that if "the conduct the plaintiff seeks to recover for amounts to the destruction or taking of the property, then the action is properly deemed one for conversion." Id. (emphasis added). Thus, it is not an issue of unresolved state law that Nationwide's taking of Thyroff's property may form the basis of a conversion claim. Therefore, assuming conversion is cognizable for electronic data, Thyroff has alleged all of the elements for a claim of conversion as to his personal information, and his claim was improperly dismissed.
 
 
 16
 The district court incorrectly found that Thyroff failed to meet these elements because Thyroff did not expressly allege that Nationwide exercised dominion over his personal property. Nationwide repeats this on appeal, claiming that the complaint is insufficient because it does not expressly allege that Nationwide excluded Thyroff from exercising his right to possession. However, construing the complaint in favor of Thyroff, while giving him every permissible inference, as we must on a motion to dismiss, see Sweet, 235 F.3d at 83, we find that Thyroff's complaint—which alleges that Nationwide took possession of Thyroff's personal property that cannot be replaced—satisfies Thyroff's burden according to principles resolved under New York law. See, e.g., Seventh Regiment Fund, Inc., 98 N.Y.2d at 259-60, 746 N.Y.S.2d 637, 774 N.E.2d 702; Sporn, 58 N.Y.2d at 487-88, 462 N.Y.S.2d 413, 448 N.E.2d 1324.
 
 
 17
 Similarly, we disagree with the district court's finding that Thyroff failed to state a claim for conversion of any business records on the AOA because Nationwide owns the AOA. Nationwide owns the AOA, but that does not mean that it also owns any records that Thyroff may have saved on the system. Additionally, Thyroff has alleged that he installed his personal computer programs onto the AOA, and it is clear that Nationwide does not own these programs. Had Nationwide leased Thyroff a filing cabinet into which Thyroff placed his personal property, such as a camera, Nationwide would not contend that it could seize Thyroff's camera when it reclaimed its filing cabinet. The instant situation is no different. This argument could be tenable if Thyroff had agreed to such terms, but the AOA lease agreement contains no such language transferring the ownership of Thyroff's personal property that he saved on the AOA to Nationwide.
 
 
 18
 Although the AOA lease agreement could arguably be read to deem the policyholder information the property of Nationwide, even this is not clear from the face of the agreement, so we must infer that it does not, given the posture of this case. See Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469-70 (2d Cir.1995). The district court therefore erred in drawing the opposite inference against Thyroff on a motion to dismiss. See id. Thus, if a conversion claim may extend to electronic data, Thyroff has stated a claim sufficient to survive Nationwide's motion to dismiss for both his personal and business data.
 
 
 19
 Nationwide, however, argues that a claim of conversion is not cognizable for electronic data. The district court did not provide this as a basis for dismissing Thyroff's claim, but we are free to affirm a decision on any grounds supported in the record, even if it is not one on which the trial court relied. McCall v. Pataki, 232 F.3d 321, 323 (2d Cir.2000).
 
 
 20
 In making its argument that conversion is not available for electronic data, Nationwide points to New York case law, which states that an action for conversion will not normally lie over intangible property, see Sporn, 58 N.Y.2d at 489, 462 N.Y.S.2d 413, 448 N.E.2d 1324. It then argues that electronic data is intangible and therefore not convertible. Nationwide concedes, as it must, that there is an exception to this rule for documents that embody an intangible right, like stock certificates, which may be the subject of conversion. See Iglesias v. United States, 848 F.2d 362, 364 (2d Cir.1988).
 
 
 21
 A survey of New York state case law reveals that the issue of whether a conversion claim may apply to electronic data is unsettled. The New York Court of Appeals has held that a conversion claim may not lie for intangible property. See Sporn, 58 N.Y.2d at 489, 462 N.Y.S.2d 413, 448 N.E.2d 1324. It has created an exception to this, however,—for information merged into a document, such as with a stock certificate—that could potentially be extended to the instant case to enable a claim for the conversion of electronic data merged into a computer program.
 
 
 22
 In Pierpoint v. Hoyt, 260 N.Y. 26, 28-29, 182 N.E. 235 (1932), and Agar v. Orda, 264 N.Y. 248, 251, 190 N.E. 479 (1934), the New York Court of Appeals explained this so-called merger exception. In those cases, the court emphasized that although shares of stock are intangible property, they merge with the stock certificates, so that conversion of the certificate may be treated as conversion of the shares that the certificate represents. Pierpoint, 260 N.Y. at 29, 182 N.E. 235; Agar, 264 N.Y. at 251, 190 N.E. 479. The intangible property thus becomes convertible by way of merger. It is unclear and unresolved, however, whether this rationale applies to electronic data.[2]
 
 
 23
 The various Departments of the Appellate Division have also decided cases that are instructive to the instant appeal. For instance, the First Department found no cause of action for the conversion of plaintiff's time, assets, associations, employees' services and equipment because it found that no cause of action exists for the conversion of intangibles and because plaintiff failed to establish that defendants exercised dominion over plaintiff's assets or equipment to the exclusion of plaintiff's rights. MBF Clearing Corp. v. Shine, 212 A.D.2d 478, 623 N.Y.S.2d 204, 206 (1995). Employing this same reasoning in Ippolito v. Lennon, 150 A.D.2d 300, 542 N.Y.S.2d 3, 6 (1989), the First Department found that an artist could not sue for conversion of his interest in his performance. Id. In dismissing this claim, the court highlighted the merger exception mentioned above. Id. It stated that "under an expanded definition of the tort, conversion is limited to those intangible property rights customarily merged in, or identified with, some document." Id. (citation omitted). Such broad language appears to sanction conversion claims for any intangible property that is embodied in a document, see id., and this would support Thyroff's position. Weighing against this interpretation, however, is the fact that the performance in Ippolito was taped, and the taped performance formed the basis of the underlying, attempted conversion action. Id. at 5. If the court really were sanctioning a broad application of merger, it is unclear why it would not have applied it in Ippolito, yet it did not.
 
 
 24
 The Second Department has also explained that the conversion of intangible property is not actionable. See Star Contracting Co. v. McDonald's Corp., 201 A.D.2d 721, 608 N.Y.S.2d 327, 327 (1994); Rao v. Verde, 222 A.D.2d 569, 635 N.Y.S.2d 660, 661 (1995). In Rao, the conversion claim was based on medical records and patient lists. Id. at 661. Plaintiffs claimed conversion over the information contained in the lists, which defendants continued to use after they returned the documents to plaintiffs. Id. The court held that such intangible information could not be the subject of a conversion action. Id.
 
 
 25
 Rao is similar, but significantly distinguishable, from the instant case. Both cases are addressing the possible conversion of information. See id. However, Rao is not precisely on point because in that case, the documents were returned to plaintiffs, and the claim covered only the information contained in the documents. See id. In the instant case, the claim covers not only information but Thyroff's computer software programs into which the information was entered. Thus, a merger theory could support a claim of conversion in the instant case, while not running afoul of Rao, because unlike in Rao, the items arguably supporting merger have not been returned to plaintiff.
 
 
 26
 The Third Department also noted that there is no cause of action for the conversion of intangibles. See Waldron v. Ball Corp., 210 A.D.2d 611, 619 N.Y.S.2d 841, 843 (1994). This case seems most relevant to the instant case and weighs in favor of Nationwide. In Waldron, the court found non-cognizable a claim for the conversion of medical records. Id. Waldron is arguably distinguishable because it appears that the court's rationale in that case focused on plaintiff's lack of a possessory interest in the records, while in the instant case, Thyroff's possessory interest is assumed for the purposes of defendant's motion to dismiss.
 
 
 27
 Thyroff bases his appeal primarily on a New York, trial-court case, Shmueli v. Corcoran Group, 9 Misc.3d 589, 802 N.Y.S.2d 871 (N.Y.Sup.Ct.2005). In that case, the court specifically held that computerized lists can form the basis of a conversion action, reasoning that "electronically written `documents' should not be treated with less dignity of ownership for conversion purposes, than ink written `documents.'" Id. at 592-93 & n. 4, 802 N.Y.S.2d 871. Because this issue has not been definitively resolved by the New York Court of Appeals, we can not be certain. The issue is dispositive in resolving the instant case. We therefore certify to the New York Court of Appeals the question of whether electronic data, computer programs, or electronic data saved in computer programs can support a claim for conversion under New York law.
 
 II. Breach of Contract Claim
 
 28
 The district court dismissed Thyroff's breach-of-contract claim on summary judgment after holding that defendants breached neither the AA nor AOA by preventing Thyroff from accessing policyholder information. We find the dismissal of this claim proper.
 
 
 29
 In support of his breach-of-contract claim, Thyroff relies on section 11(f) of the AA in conjunction with the implied covenant of good faith and fair dealing, see 511 West 232nd Owners Corp., 98 N.Y.2d at 153, 746 N.Y.S.2d 131, 773 N.E.2d 496 (stating that all contracts under New York law include this covenant), arguing that Nationwide violated this when it deprived Thyroff of the policyholder information that he needed to compete. To support his position, Thyroff cites to non-binding precedent in which other courts have interpreted 11(f) of the AA as permitting competition.[3] See Thyroff's Opening Br. at 28-29. Thyroff spends much of his brief arguing that the AA does not vest in Nationwide an ownership right to control the policyholder information. This may be true, but that does not resolve the issue of whether Nationwide owed Thyroff a contractual obligation not to seize its policyholder information without first providing Thyroff an opportunity to duplicate it.
 
 
 30
 The cases to which Thyroff cites in support of his position are inapposite. See id. They are cases in which Nationwide was attempting to sue its agents for using policyholder information, and the courts held that it could not. See, e.g., Nationwide Mut. Ins. Co. v. Bland, 2003 WL 23354137, **1-2 (D.Conn. Mar.30,2003).[4] They were not cases like the instant case in which an agent was suing Nationwide for breach of contract for failing to provide access to the information.
 
 
 31
 Thyroff also cites to M/A-COM Security Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir.1990) (per curiam), to support his position that the implied covenant of good faith and fair dealing prevented Nationwide from seizing the policyholder information. In Galesi, we stated that New York law implies a covenant of good faith and fair dealing, "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. However, this covenant only applies where an implied promise is so interwoven into the contract "as to be necessary for effectuation of the purposes of the contract." Id. For this to occur, a party's action must directly violate "an obligation that may be presumed to have been intended by the parties." Id. However, "the implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." Id. (internal quotation marks omitted).
 
 
 32
 Despite Thyroff's evidence that Nationwide may have acted in bad faith in the manner in which it removed the policyholder information from Thyroff's possession, no rational trier of fact could conclude that in so doing Nationwide violated any provisions of the contract. See Galesi, 904 F.2d at 136. Section 11(f) simply permits Thyroff to compete without forgoing his "Agency Security Compensation," so long as he does so in accordance with section 11(f)'s requirements. No permissible reading of this section, however, commands that Nationwide provide Thyroff with the means to compete. Such a reading requires inferences beyond what could have reasonably been intended by the contract.[5]
 
 
 33
 Thyroff has failed to point to any provision of either the AA or AOA that, even if read together with the implied covenant of good faith, imposes an affirmative obligation on Nationwide that it breached. The district court's grant of summary judgment on Thyroff's breach-of-contract claim is therefore affirmed.
 
 CONCLUSION
 
 34
 For the foregoing reasons, we affirm the decision of the district court dismissing Thyroff's breach-of-contract claim on summary judgment, and we certify the following determinative issue of state law to the New York Court of Appeals pursuant to Second Circuit Local Rule § 0.27 and New York Court of Appeals Rule § 500.27: Is a claim for the conversion of electronic data cognizable under New York law? The Court of Appeals may, of course, reformulate or expand this question as it wishes. In particular, although this opinion treats Thyroff as the owner of the policyholder information, Thyroff's personal records, and his personal computer programs on the AOA, the New York Court of Appeals is free to address who it believes is the proper owner of this information. It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals, or once that court declines certification. Finally, we order the parties to bear equally any fees and costs that may be requested by the New York Court of Appeals.
 
 CERTIFICATE
 
 35
 The following question is hereby certified to the New York Court of Appeals pursuant to Second Circuit Local Rule § 0.27 and 22 N.Y. C.R.R. § 500.27, as ordered by the Court of Appeals for the Second Circuit:
 
 
 36
 (1) Is a claim for the conversion of electronic data cognizable under New York law?
 
 
 
 Notes:
 
 
 [1]
 "Agency Security Compensation" is compensation available to agents on the basis of a formula provided in the AA
 
 
 [2]
 The Ninth Circuit has applied the merger rationale to enable a conversion claim for an internet domain nameSee Kremen v. Cohen, 337 F.3d 1024, 1029-32 (9th Cir.2003). In so doing, the court likened domain names to stock certificates, extending the merger doctrine from the former to the latter. Id. at 1030-31. The Ninth Circuit was of course interpreting California law while the instant case involves New York law, but Kremen provides one possible option for addressing the issue raised in the instant case.
 
 
 [3]
 Nationwide apparently uses a similar version of this AA with its other agents
 
 
 [4]
 One of the cases to which Thyroff cites,Nationwide Mutual Insurance Co. v. Fleming, No. 99-1417 (W.D.Pa. Oct. 2, 2001), is unpublished, not available electronically, and was not included along with Thyroff's briefs. See Thyroff's Opening Br. at 28, 32-35. We therefore assume that Thyroff's characterization of this cases in his brief is commensurate with his accurate characterization of Bland, which simply supports the conclusion that Nationwide, as plaintiff, cannot necessarily obtain relief because of 11(f) because the AA does not clearly state that Nationwide owns the policyholder information. See Bland, 2003 WL 23354137, **3-4.
 
 
 [5]
 In his reply brief, Thyroff also contends that section 12 of the AA supports his claimSee Thyroff's Reply Br. at 13. That provision is practically identical to section 11(f), except it applies if the AA is cancelled within five years from the date of an agent's first contract with Nationwide. Thus, for the same reasons we reject Thyroff's arguments regarding section 11(f), we similarly reject them as they apply to section 12.