21-1385-cv
*UBS AG, London Branch v. Greka Integrated, Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of June, two thousand twenty-two.

Present:
> ROSEMARY S. POOLER,
> ROBERT D. SACK,
> ALISON J. NATHAN,
> *Circuit Judges*.

---

UBS AG, LONDON BRANCH,

> *Plaintiff-Counter-*
> *Defendant-Appellee*,          21-1385-cv

> v.

GREKA INTEGRATED, INC.,

> *Defendant-Counter-*
> *Claimant-Appellant*.

---

For UBS AG, London Branch:          DANIEL L. CANTOR, (Ethan M. Scapellati, *on the brief*), O'Melveny & Myers LLP, New York, NY.

For Greka Integrated, Inc.:          ERIC W. BERRY, Berry Law PLLC, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on May 5, 2021, is **AFFIRMED**.

Greka Integrated, Inc. ("GIT"), appeals from the district court's grant of summary judgment against it, dismissal of its counterclaims, and subsequent denial of reconsideration, regarding its guaranties under twin loan agreements. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"We review *de novo* a district court's grant of summary judgment after construing all evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Sotomayor v. City of New York*, 713 F.3d 163, 164 (2d Cir. 2013) (per curiam). Similarly, "we review *de novo* a district court's order granting a motion to dismiss counterclaims under Rule 12(b)(6)." *Oneida Indian Nation v. Phillips*, 981 F.3d 157, 165 (2d Cir. 2020). We generally review denials of motions for reconsideration for abuse of discretion. *See Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011). Where, as here, the district court turned to the merits of an argument made for the first time on reconsideration, we review the issue *de novo*. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 739 n.21 (2d Cir. 2010)).

**BACKGROUND**

On May 20, 2016, UBS AG, London Branch ("UBS") executed twin, substantively identical Credit Agreements with Rincon Island Limited Partnership ("Rincon") and HVI Cat Canyon, Inc. ("HVICC") (together, "the Borrowers")—both oil and gas extraction companies and GIT subsidiaries—that converted the Borrowers' pre-existing obligations to UBS under a prior financial arrangement to two $50 million notes (the "Loans"). On the same day, UBS entered into corresponding, twin Guaranties with GIT, whereby GIT guaranteed to UBS the

2

payment in full of principal, interest, and other fees under the Credit Agreements in an event of default.

Under § 2.01 of the Guaranties, GIT guarantied UBS "prompt payment in full when due" of the principal and interest on the Loans if the Borrowers "shall fail to pay in full when due." J. App'x at 47 § 2.01. Section 2.02 provides:

> The obligations of [GIT] under Section 2.01 shall constitute a guaranty of payment and, to the fullest extent permitted by applicable Requirements of Law, are absolute, irrevocable and unconditional, irrespective of the value, genuineness, validity, regularity or enforceability of the Guaranteed Obligations of the Borrowers . . . under the Credit Agreement, the Notes, if any, the Guaranty Agreement or any other agreement or instrument referred to herein or therein, or any substitution, release or exchange of any other guarantee of or security for any of the Guaranteed Obligations, and, irrespective of any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge or defense of a surety or a Guarantor (except for payment in full). . . .

*Id.* at 47–48 § 2.02.

Section 4.01(h) of the Credit Agreements required the Borrowers to provide UBS with a certificate certifying their solvency. After some back-and-forth, the Borrowers provided, and UBS accepted, Solvency Certificates that referenced the "PV-10 Value" of the Borrowers in their "fair value of assets" and "present fair saleable value of property" representations. J. App'x at 852. PV-10 is a method used in the energy industry to estimate the present value of core assets which are off balance sheet by applying a ten percent discount factor to anticipated cash flows.

In August 2016, Rincon filed a voluntary petition for bankruptcy. Under § 7.01(h) of the Credit Agreements, commencement of voluntary bankruptcy proceedings constitutes an Event of Default that accelerates the debt. HVICC similarly filed a voluntary bankruptcy petition in July 2019. To date, neither the Borrowers nor GIT have made any repayments to UBS under the Credit Agreements or Guarantees.

3

In 2019, in the HVICC bankruptcy proceedings, UBS challenged, through expert testimony, the value of the Borrowers' stated oil and gas reserves, criticizing PV-10 as a valuation method. GIT contends that this resulted in HVICC's assets being liquidated at a lower valuation, exposing GIT to greater liability under the Guaranties. In addition, in both the HVICC and Rincon bankruptcy proceedings, UBS also entered into Trustee Credit Agreements ("TCAs") pursuant to which a UBS affiliate loaned money to the respective bankruptcy trustees to provide working capital.

UBS filed a motion for summary judgment in lieu of complaint pursuant to N.Y. C.P.L.R. 3213 in New York state court in October 2019, seeking repayment from GIT under the Guaranties. GIT then removed the case to federal court and filed counterclaims, which UBS moved to dismiss. On April 23, 2020, the district court granted UBS's motions for summary judgment and to dismiss GIT's counterclaims. *UBS AG, London Branch v. Greka Integrated, Inc.*, No. 19-CV-10786 (LLS), 2020 WL 1957530 (S.D.N.Y. Apr. 23, 2020). Nearly a year later, GIT moved for reconsideration and, upon reconsideration, to grant summary judgment for GIT. The district court denied GIT's motion on May 4, 2021. *UBS AG, London Branch v. Greka Integrated, Inc.*, No. 19-CV-10786 (LLS), 2021 WL 1759109 (S.D.N.Y. May 4, 2021). The next day, the Clerk entered judgment in the amount of $100 million plus interest, fees, and costs in an amount to be determined. [1]

---

[1] The magistrate judge subsequently calculated the remaining payments, interest, and fees owed to UBS totaling $36,967,650.10. *UBS AG, London Branch v. Greka Integrated, Inc.*, No. 19-CV-10786 (LLS) (KNF), 2021 WL 2014868 (S.D.N.Y. May 20, 2021).

## DISCUSSION

### I.       Procedural Objections

N.Y. C.P.L.R. 3213 "allows actions based upon an instrument for the payment of money only to be commenced with a motion for summary judgment rather than a complaint [and] provides a speedy and effective means for resolving presumptively meritorious claims." *Banco Popular N. Am. v. Victory Taxi Mgmt., Inc.*, 1 N.Y.3d 381, 383 (2004) (alterations and internal quotation marks omitted).  The district court concluded that UBS's suit was proper under C.P.L.R. 3213 because it was based upon an "instrument for the payment of money only," *UBS AG*, 2020 WL 1957530, at *4–5, which GIT maintains is erroneous.  However, GIT's arguments regarding C.P.L.R. 3213 are irrelevant.  C.P.L.R. "§ 3213 is a procedural rule, and," therefore, "when this case was removed to federal court, the regime of the Federal Rules replaced that of § 3213." *Com/Tech Commc'n Techs., Inc. v. Wireless Data Sys., Inc.*, 163 F.3d 149, 151 (2d Cir. 1998) (per curiam).  Thus, upon removal, the C.P.L.R. 3213 motion for summary judgment in lieu of complaint was converted to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

The chief consequence of affording "expedited summary judgment pursuant to CPLR 3213," Appellant Br. at 18, that GIT complains of is that "[t]he grant of the CPLR 3213 motion denied GIT any opportunity for discovery," *id.* at 50.  At bottom, therefore, to the extent GIT's procedural objections to the summary judgment motion's "expedited" treatment have relevance in federal court, they are effectively one and the same as GIT's argument that it should have been afforded discovery to develop its defenses.

A party's opposition to summary judgment based on the need for additional discovery is governed by Federal Rule of Civil Procedure 56(d).  To request discovery under Rule 56(d), "a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained;

5

(2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004). A district court's denial of a request for additional discovery is reviewed for abuse of discretion. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994).

The district court held that, notwithstanding general assertions of the need for discovery, GIT "has not attempted to make th[e] showing" required by Rule 56(d). *UBS AG*, 2020 WL 1957530, at *6 n.3. On appeal, GIT cites assertions in its memorandum of law opposing summary judgment, as well as certain paragraphs in two declarations submitted in connection with its opposition, as evidence that it requested additional discovery. Reply Br. at 23–25. But GIT conceded at oral argument that it never made a Rule 56(d) motion, and the portions of its declarations below it relies on merely assert that UBS had not provided support for its damages calculations; they do not actually request discovery on the issues raised, let alone meet the other requirements of Rule 56(d). General assertions of the need for discovery in a memorandum of law plainly do not suffice. "[T]he failure to file such an affidavit is fatal to a claim . . . even if the party resisting the motion for summary judgment alluded to a claimed need for discovery in a memorandum of law." *Gurary v. Winehouse*, 190 F.3d 37, 43–44 (2d Cir. 1999). GIT fails to show the district court erred, let alone abused its discretion, in addressing UBS's summary judgment motion prior to discovery.

## II.  UBS's Summary Judgment Motion

As the district court noted, "GIT does not dispute the existence of the loans and Guaranties or its failure to perform under the Guaranties." *UBS AG*, 2020 WL 1957530, at *3. Instead, GIT argues that it raised affirmative defenses that should have precluded summary judgment. In particular, GIT argues that four of the counterclaims it asserted—for breach of

6

contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and fraudulent inducement—should have been deemed affirmative defenses sufficient to deny UBS summary judgment.[2] It also argues that two further defenses it did not initially raise on summary judgment—that the subsequent TCAs UBS entered into discharged the Guaranties, and that no valid Event of Default occurred triggering GIT's liability under the Guaranties—raised genuine factual disputes.

Each of GIT's defenses and counterclaims falls short substantially for the reasons stated by the district court. GIT waives its breach of contract and promissory estoppel arguments by failing to develop them in its briefing, *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998), and effectively conceding that its breach of contract theory should be dismissed as duplicative, Appellant Br. at 49 ("[T]he absence of any express contractual directive requiring UBS to adhere to the PV-10 methodology in subsequent litigation . . . means that the claim is actionable under the implied covenant, *rather than as a breach of contract*." (emphasis added)).

With respect to the breach of implied covenant argument, we see no error in the district court's conclusion that "[a] reasonable person would not be justified in thinking that the Guaranties . . . imply an obligation on UBS to agree with the PV-10 value of the reserves." *UBS AG*, 2020 WL 1957530, at *9. PV-10 values are not referenced in the Guaranties, appearing instead in the Solvency Certificates provided by the Borrowers to UBS pursuant to the Credit Agreements as a condition precedent to UBS's obligations. Those certificates constituted a representation from the Borrowers to UBS, upon which UBS was entitled to rely without further investigation. *See Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007). Reading such language to impose an obligation on UBS to adhere to the

---

[2] While GIT also asserted a counterclaim for innocent misrepresentation below, it does not address it on appeal, and has therefore abandoned the argument. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995).

PV-10 methodology in future litigation would transform the contracts, "requir[ing] inferences beyond what could have reasonably been intended," *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 408 (2d Cir. 2006), and adding a "substantive provision not included by the parties," *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005).[3]

GIT's fraudulent inducement defense similarly fails. GIT primarily attacks the district court's holding that "UBS's view on the PV-10 value was an opinion, not a fact," *UBS AG*, 2020 WL 1957530, at *7, and therefore not actionable. Under New York law, "the general principle [is] that statements of opinion generally cannot constitute fraud," but there is a "narrow exception to that rule: namely, that opinions *may* constitute actionable fraud where a present intent to deceive exists." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 134 (2d Cir. 2008) (internal quotation marks omitted). But nothing in the record here provides support for the application of this "narrow" exception. Here, as the district court found, there is essentially no evidence, nor non-conclusory allegations, in the record from which the Court can infer a present intent to deceive—that is, that in 2016, UBS believed the PV-10 methodology to be inaccurate, let alone that it intended to deceive GIT by conveying a belief in PV-10's soundness. *UBS AG*, 2020 WL 1957530, at *6 ("There is no evidence that in 2016, UBS held the same view on the PV-10 value as that of its expert witness in 2019."). Pointing to UBS's subsequent position in bankruptcy litigation in 2019 is not sufficient. *See, e.g.*, *Perella Weinberg Partners LLC v. Kramer*, 58 N.Y.S.3d 384, 390 (App. Div. 1st Dep't 2017) ("[T]he facts alleged are insufficient to raise an inference of a present intent to deceive at the time the

---

[3] GIT develops a theory on appeal that "UBS sought that solvency certificate specifically so it could rely on it in future litigation over the GIT's guaranties and, in particular, to defeat possible claims by other creditors of GIT that the Guaranties could be voided or rescinded as fraudulent conveyances." Appellant Br. at 5; *see also id.* at 36–37. These arguments and allegations were not made in the pleadings or briefing below, and accordingly, the Court declines to consider them on appeal. *See Norton*, 145 F.3d at 117.

8

alleged misrepresentations were made in 2011. None of the misconduct alleged occurred until at least three years later.").

GIT's argument that UBS discharged the Guaranties by agreeing to the TCAs—first raised in its untimely reconsideration motion—is barred by the terms of § 2.02 of the Guaranties. Under New York law, the guaranty "[b]y its plain terms, in broad, sweeping and unequivocal language . . . forecloses any challenge to the enforceability and validity of the documents which establish defendant's liability for payments arising under the purchase agreement, as well as to any other possible defense to [its] liability" for payments due on the underlying loans. *Cooperatieve Centrale Raiffeisen–Boerenleenbank, B.A., "Rabobank Int'l," N.Y. Branch v. Navarro*, 25 N.Y.3d 485, 494 (2015); *see also Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31, 35 (2d Cir. 1999) ("Absolute and unconditional guaranties have in fact been found to preclude guarantors from asserting a broad range of defenses under New York law.").

GIT failed to address this contractual language in the proceedings below, and the district court "conclude[d] that GIT therefore concedes the issue and acknowledges that its defenses are barred by Section 2.02." *UBS AG*, 2021 WL 1759109, at *2. GIT similarly elides the § 2.02 waiver on appeal. GIT failed to cite the provision in its opening brief, instead arguing that the Guaranties only waived contractual, rather than statutory, rights by quoting an entirely different provision, § 6.12(c). In reply, GIT argues for the first time that the § 2.02 waiver incorporated a negligence standard and could not "waive[] . . . a defense based on a creditor's bad faith impairment of collateral, such as that UBS accomplished" via the TCAs. Reply Br. at 29. As this argument was neither raised below, nor in GIT's opening brief, it has been waived. *See Norton*, 145 F.3d at 117; *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010).

9

Even assuming the premise of GIT's argument were correct, the record contains no evidence of bad faith on UBS's part with respect to the TCAs, a point which GIT effectively concedes. *See* Reply Br. at 31 ("[H]ad GIT received the requested discovery . . . GIT's defenses based on the Trustee Credit Agreements *would have been* revealed, along with triable issues preventing summary judgment prior to depositions and written discovery." (emphasis added)).

Finally, GIT also argues that no valid Event of Default occurred because § 7.01(h) of the Credit Agreements is an unenforceable *ipso facto* clause. This argument was not raised in GIT's summary judgment or reconsideration briefing below and accordingly has been waived. *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005). In any event, it fails in light of *U.S. Bank Trust National Ass'n v. AMR Corp.* (*In re AMR Corp.*), 730 F.3d 88 (2d Cir. 2013). There, we considered the same arguments based on similar contractual language, but held that the "argument that the Code categorically prohibits enforcement of such [*ipso facto*] clauses . . . is without merit"; rather, we held that "*ipso facto* clauses in a nonexecutory contract are not unenforceable pursuant" to the Bankruptcy Code. *Id.* at 106–07, 112. GIT does not argue that the Guaranties or Credit Agreements are executory contracts or otherwise articulate why the Bankruptcy Code renders § 7.01(h) unenforceable beyond advancing the categorical argument rejected in *In re AMR*.

**III.    UBS's Motion to Dismiss the Counterclaims**

The district court's grant of UBS's motion to dismiss GIT's counterclaims is affirmed for substantially the same reasons as GIT's parallel defenses to summary judgment were properly rejected.

\*       \*       \*

We have considered GIT's remaining arguments and find in them no basis for reversal.

We therefore AFFIRM the May 5, 2021 judgment of the district court.

FOR THE COURT
Catherine O'Hagan Wolfe, Clerk