Gillis v Carmel Richmond Nursing Home Inc. (2024 NY Slip Op 50984(U))

[*1]

Gillis v Carmel Richmond Nursing Home Inc.

2024 NY Slip Op 50984(U)

Decided on July 29, 2024

Supreme Court, Richmond County

DiDomenico, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 29, 2024
Supreme Court, Richmond County

Maria Gillis, as Proposed Administrator of the Estate of JOSEPH LISCIANDRI, Plaintiff,

against
Carmel Richmond Nursing Home Inc. d/b/a CARMEL RICHMOND HEALTHCARE AND REHABILITATION CENTER, ABC CORPORATION, ABC PARTNERSHIP, Defendant(s).

Index No. 150686/2022

Plaintiff is represented by: 
Joseph Leonard Ciaccio Esq. 
Napoli Shkolnik, PLLC 
400 Broadhollow Road, Suite 305, 
Melville, NY 11747 
Defendant is represented by 
Brian Michael Andrews Esq. 
Barker Patterson Nichols, LLP 
115 E Stevens Ave Ste. 206 
Valhalla, NY 10595

Catherine M. DiDomenico, J.

Recitation as required by CPLR 2219(a) of the papers considered in the review of Motion.
Sequence Number 001
Numbered
Summons and Complaint, 1
Notice of Motion by Defendant (001), 2
Affidavit and Affirmation in Opposition by Plaintiff, 3
Reply and Affirmation by Plaintiff 4
Upon the foregoing cited papers, the Decision and Order is as follows:
Procedural and Factual History
The present action was commenced by the filing of a Summons with Verified Complaint on April 10, 2022. Therein, Plaintiff asserts eight causes of action relating to the death of Joseph Lisciandri ("Decedent"), her father, who was a resident of Defendant's nursing home. Decedent was initially admitted to Carmel Richmond Nursing Home for rehabilitation on June 3, 2017. He was admitted with a primary diagnosis of advanced Parkinson's disease and secondary diagnoses of dementia and hypertension. Plaintiff alleges that her father became infected with SARS-CoV-2 ("COVID-19") while in Defendant's care and passed away on April 10, 2020. Plaintiff alleges that Decedent passed away as a result of Defendant's acts and omissions by failing to take proper precautions against the spread of the disease.
On April 2, 2020, Decedent began experiencing COVID-19 symptoms including fever, cough, and poor appetite. He was tested for COVID-19 and classified as a "Person Under Investigation" within the facility while his results were pending. As a result of this classification, he was immediately placed on "contact droplet precaution" to prevent the spread of the disease throughout the facility. On the following day, April 3, 2020, his COVID-19 test came back positive, and he was treated with Hydroxychloroquine, antibiotics, IV hydration, and supplemental oxygen. Despite these good faith efforts at treatment, Decedents condition continued to decline and ultimately resulted in his death on April 10, 2020. Decedent's cause of death was allegedly related to complications from his COVID-19 infection. 
On December 19, 2023, Defendant moved by pre-answer Notice of Motion (Seq. No. 001) for an order dismissing Plaintiff's Complaint pursuant to CPLR §§ 3211(a)(7) and (a)(2). Specifically, Defendant claims it is immune from liability under New York's Emergency or Disaster Treatment Protection Act ("EDTPA") and the Federal Public Readiness and Emergency Preparedness Act ("PREP Act"). Plaintiff opposed the motion, arguing that Defendant failed to conclusively establish that it is entitled to immunity under either statute. In the alternative, Plaintiff argues that if immunity applies, it has plead causes of action for gross negligence and other claims that are exempt from EDTPA immunity. After receipt of Plaintiff's reply papers, the present motion was submitted for decision with oral argument waived by both parties.
Applicable Law
When considering a motion to dismiss pursuant to CPLR § 3211(a)(7), for a failure to state a cause of action, a complaint is liberally construed, the facts alleged therein are presumed to be true and the plaintiff is afforded the benefit of every favorable inference. See Watts v. City of New York, 129 N.Y.S.3d 340 (2d Dept. 2020). However, bare legal conclusions and factual claims that are flatly contradicted by evidence in the motion record are not entitled to this presumption. See Pincus v. Wells, 35 AD3d 569 (2d Dept. 2006). The defendant bears the burden of establishing that the complaint fails to state a cause of action. See Connolly v. Long Island Power Auth., 30 NY3d 719 (2018).
Generally, the role of the court is to determine only whether the facts alleged in the complaint fall within a cognizable legal theory. See Martinez v. NYC Health & Hosps. Corp., 203 N.Y.S.3d 653 (2d Dept. 2024). However, a court may consider evidentiary material submitted by a defendant in support of a motion to dismiss pursuant to CPLR §3211(a)(7). See [*2]Bokhour v. GTI Retail Holdings, Inc., 941 N.Y.S.2d 675 (2d Dept. 2012). If a court considers evidentiary material but does not convert the motion into one for summary judgment, the relevant question becomes whether the proponent of the pleading has a cause of action, not simply whether he or she has stated one. See Sokol v. Leader, 904 N.Y.S.2d 153 (2d Dept. 2010). However, this is not equivalent to a summary judgment standard as a plaintiff is not required to supplement his pleading with an affidavit and "will not be penalized because he has not made an evidentiary showing in support of his complaint." Rovello v. Orofino Realty Co., 40 NY2d 633 (1976); 106 N. Broadway, LLC v. Lawrence, 189 AD3d 733 (2d Dept. 2020); E&D Group, LLC v. Vialet, 134 AD3d 981 (2d Dept. 2015).
Decision
Under the EDTPA, which was enacted on April 3, 2020, nursing homes were granted immunity from civil and criminal liability for any alleged harm or damages sustained from providing health care services during the COVID-19 pandemic. See Former Public Health Law §3082(1); see also Martinez v. NYC Health & Hosps. Corp., 203 N.Y.S.3d 653 (2d Dept. 2024). However, this immunity does not apply to claims for "willful or intentional criminal conduct, gross negligence, reckless misconduct or intentional infliction of harm" by the defendant facility, provided these claims did not result from "a resource or staffing shortage." See Former Public Health Law §3802(2); see also Est. of Alechko by Dingee v. Sprain Brook Manor Rehab, LLC, 203 N.Y.S.3d 865 (NY Sup. Ct. 2024). It is the moving defendant's initial burden to satisfy that they qualify for EDTPA immunity. 
For immunity to attach, Defendant must establish three requirements: (1) that health care services at issue were arranged for or provided pursuant to a COVID-19 emergency rule or applicable law; (2) the act or omission was "impacted" by decisions or activities responsive to COVID-19 and in support of the State's directives; and (3) the health care services to the patient were provided in good faith. See Former Public Health Law 3082(1); see also Mera v. New York City Health & Hosps. Corp., 197 N.Y.S.3d 278 (2d Dept. 2023). A nursing home may support its motion to dismiss by submitting an affidavit from a treating physician, or from the medical director of the facility who has personal knowledge of its response to the COVID-19 pandemic. See Whitehead v. Pine Haven Operating LLC, 201 N.Y.S.3d 697 (3d Dept. 2023); See also Crampton v. Garnet Health, 155 N.Y.S.3d 699 (NY Sup. Ct. 2021).
a. Repeal of the EDTPA.
As a threshold matter, Plaintiff argues that the EDTPA is not applicable to this case at all, as it was retroactively repealed on April 7, 2021. However, the appellate courts of this state have repeatedly held that the EDTPA was not repealed retroactively but prospectively. See Damon v. Clove Lakes Healthcare & Rehabilitation Ctr., Inc., 2024 NY Slip Op. 03029 (2d Dept. 2024); see also Whitehead v. Pine Haven Operating LLC, 222 AD3d 104 (3rd Dept. 2023). Thus, the EDTPA remains as controlling law for this proceeding as the present causes of action accrued before the repeal date. See Ruth v. Elderwood at Amherst, 175 N.Y.S.3d 811 (4th Dept. 2022). Having determined that the EDTPA is controlling law, the Court must now determine whether Defendant has established a valid immunity defense based on the factors set forth in that statute.
b. Defendant's Claim of EDPTA Immunity.
In support of its claim of immunity, Defendant has submitted the affidavit of Mary Beth Francis, RN, MS, LNHA, the current Executive Director and Administrator of Carmel Richmond. During the time Decedent was present at the nursing home, Ms. Francis served as the Assistant Administrator of that facility. Defendant also submits the affirmation of Miguel Tirado, MD, who currently serves as the Medical Director at Carmel Richmond. Prior to that position, Dr. Tirado served as a Voluntary Attending Physician in Defendant's facility. 
For the limited purpose of establishing EDTPA immunity, Dr. Tirado's affirmation and Ms. Francis' affidavit establish that Defendant developed and implemented various policies and procedures in response to the COVID-19 pandemic and in compliance with the recommendations of the New York State Department of Health and the Federal Centers for Disease Control. The affirmations further establish several ways in which Decedent's treatment was "impacted" by those policies. For example, during February and March 2020, Defendant enacted several preventative measures in response to COVID-19. Some of these precautions included assigning infection control monitors to ensure compliance with public health directives, screening all visitors with temperature checks and symptom questionnaires prior to entry, denying access to any visitors displaying COVID symptoms, restricting visitation, implementing social distancing, cancelling group activities, screening all staff for signs and symptoms of COVID-19, and implementing policies related to diagnosing, testing, and treating COVID-19. As a resident of Defendant's facility, Decedent was subject to, and affected by, these policy changes and restrictions.
Dr. Tirado's affirmation and Ms. Francis's affidavit, read in conjunction with the approximate 7000 pages of medical records made part of this motion, provide several examples of how these preventative measures and protocols specifically and individually impacted Decedent's care. Decedent was (a) required to undergo COVID-19 testing, (b) continually monitored for COVID-19 symptoms, (c) given temperature checks, (d) classified as a "person under investigation" and placed on a "strict contact droplet precaution" when symptoms were observed. Notwithstanding these precautions, on April 3, 2020, Decedent tested positive for COVID-19 and was treated with Hydroxychloroquine and supplemental oxygen. This treatment, which was prescribed to COVID-19 positive patients, conclusively establishes that Decedent's treatment was specifically impacted by Defendant's response to the COVID-19 pandemic. Cf. Holder v. Jacob, 2024 NY Slip Op 03864 (1st Dept. 2024)[FN1]
. Despite Defendant's good faith efforts at treatment, Decedent's health continued to deteriorate, and he passed away on April 10, 2020. Upon review, this Court finds that these affirmations, coupled with the extensive medical records provided, establish the three factors necessary for immunity to be granted to Defendant. See Whitehead v. Pine Haven Operating LLC, 201 N.Y.S.3d 697 (3d Dept. 2023); see also Walker v. Usorov, 2023 NYLJ LEXIS 3581 (Sup. Ct. Rich. Cty. 2024) Crampton v. Garnet [*3]Health, 155 N.Y.S.3d 699 (NY Sup. Ct. 2021); Bologna v. Carmel Richmond Nursing Home, Inc., 208 N.Y.S.3d 850 (NY Sup. Ct. 2024). As Defendant has successfully established its entitlement to immunity under the EDTPA, the Court must now consider whether Plaintiff's Complaint asserts non-conclusory factual allegations sufficient to constitute an exception to EDTPA immunity. See Martinez v. NYC Health & Hosps. Corp., 203 N.Y.S.3d 653 (2d Dept. 2024)
c. Analysis of Claims Asserted by Plaintiff.
1. Gross Negligence, Intentional, Willful or Reckless Conduct
Once a defendant has established immunity under the EDTPA, a pre-answer motion to dismiss will be granted unless the complaint makes con-conclusory factual allegations of willful or intentional misconduct or gross negligence. See Ruth v. Elderwood at Amherst, 175 N.Y.S.3d 811 (4th Dept. 2022). To constitute gross negligence, a party's conduct must rise to the level of intentional wrongdoing or evince a reckless indifference to the rights of others. See Skywest Inc. v. Ground Handling, Inc., 150 AD3d 922 (2d Dept. 2017). "Stated differently, a party is grossly negligent when it fails to exercise even slight care." Seti v. Carnell Assoc., Inc., 218 AD3d 509 (2d Dept. 2023). Generally, the question of whether conduct constitutes gross negligence is a matter to be determined by the trier of fact. See Dolphin Holdings, Ltd. v. Gander & White Shipping, Inc., 998 N.Y.S.2d 107 (2014); see Fonda v. 157 East 74th Co., 158 AD2d 297 (1st Dept. 1990). 
In support of her cause of action for gross negligence, Plaintiff claims that Defendant, despite being aware of the unique risks and dangers posed by the spread of COVID-19 through a nursing home, (a) failed to enforce social distancing among residents and staff; (b) failed to timely restrict visitors; (c) failed to cancel group activities and communal dining; and (d) failed to screen volunteers, visitors, and staff for COVID-19 before allowing entry. In addition, Plaintiff alleges that Defendant was cited by the New York State Department of Health during the COVID-19 pandemic for having a deficient infection control program. While Defendant's Medical Director, Dr. Tirado, denies all of Plaintiff's factual allegations, this creates an issue of credibility which cannot be determined on a motion to dismiss. See Ippolito v. Lennon, 150 AD2d 300 (1st Dept. 1989); see also Reichle v. Mayeri, 488 N.Y.S.2d 15 (2d Dept. 1985). Moreover, given the pre-discovery posture of this case, many of the essential facts necessary to support Plaintiff's claims may be exclusively within Defendant's possession and control. See Bank of Am., N.A. v. Hillside Cycles, Inc., 89 AD3d 653 (2d Dept. 2011); see also Truesdell v. Roman Catholic Diocese of Brooklyn, 2021 N.Y.Misc. LEXIS 11026 (Sup. Ct. NY Cty. 2021); Marsh v. Arnot Ogden Med. Ctr., 91 AD3d 1070 (3rd Dept. 2012). 
When determining a §3211(a)(7) motion to dismiss, the Court is obligated to consider the facts alleged by Plaintiff to be true and afford her every favorable inference. See 17 Lexington Ave., LLC v. Alison Six Star, LLC, 2024 NY Slip Op 03718 (2d Dept. 2024); see also Quattlebaum v. Dragomir, 194 N.Y.S.3d 464 (Sup. Ct. Nass. Cty. 2023). Moreover, a plaintiff will not be penalized because he or she fails to make an evidentiary showing in support of facts alleged. See 106 N. Broadway, LLC v. Lawrence, 189 AD3d 733 (2d Dept. 2020). Given the early procedural posture of this matter, and the above presumptions, this Court finds that the [*4]factual allegations asserted by Plaintiff in her Complaint, considered in the aggregate, are sufficient to establish a viable cause of action for gross negligence sufficient to survive pre-discovery dismissal. See Dinunzio v. Cobble Hill Health Center, Inc., 2023 WL 5152496 (Sup. Ct. NY Cty. 2023); see also Murry v. Staten Is. Care Ctr., 207 N.Y.S.3d 432 (Sup. Ct. Rich. Cty. 2024); Adler v. Troy, 2023 NY Slip Op. 33804 (Sup. Ct. NY Cty.) "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss." Eccles v. Shamrock Cap. Advisors, LLC. 2024 NY Slip Op 02841 (2024). However, to the extent these same factual allegations are raised by Plaintiff to assert causes of action sounding in ordinary negligence, those claims are barred by Defendant's EDTPA immunity. See Kalogiannis v. New York Ctr. for Rehabilitation & Nursing, 196 N.Y.S.3d 918 (Sup. Ct. Qns. Cty. 2023). Moreover, Plaintiff's remaining claims for wrongful death, nursing home malpractice, and statutory violations remain only to the extent that those causes of action can be supported by a finding of gross negligence, should there be such a finding in the future. 
2. Statutorily Precluded Factual Allegations
In addition to the claims discussed above, Plaintiff's Complaint asserts several factual allegations relating to Defendant's staffing levels and the use and availability of "personal protective equipment" ("PPE"). However, the clear language of the EDTPA prohibits "acts, omissions, or decisions resulting from a resource or staffing shortage" from being used to support a gross negligence claim. See Former Public Health Law § 3082(2); see also Messina v. Clove Lakes Health Care & Rehab. Ctr., Inc., 181 N.Y.S.3d 868 (NY Sup. Ct. 2023); Highsmith v. Woodhull Med. Ctr., 210 N.Y.S.3d 923 (NY Sup. Ct. 2024). Thus, Plaintiff is precluded from asserting any factual claims relating to either of these issues in this case. 
(d) Defendant's Claim of PREP Act Immunity.
In the alternative to its claim of immunity under the EDTPA, Defendant also asserts a claim of statutory immunity under the PREP Act and argues that this federal law pre-empts this Court's jurisdiction. The PREP Act provides immunity from suit and liability under Federal and state law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure during a public-health emergency. See 42 USCA §247d-6d."State Courts addressing immunity defenses under the PREP Act are required to answer only whether the plaintiff's claims fall within the PREP Act's immunity provision if the answer is no, there is no federal law left to apply and the case can proceed under state law." Kluska v. Montefiore St. Luke's Cornwall, 227 AD3d 690 (2d Dept. 2024).
When determining whether the PREP Act applies, a court must consider whether a covered countermeasure is an integral part of the plaintiff's claim, such as a theory of liability specifically related to the improper use of a drug, device, or vaccine. See Escobar v. Mercy Med. Ctr., 2024 NY Slip Op 50704(U) (Sup. Ct. Nass. Cty. 2024). As applied to this case, it is not alleged that any of the modalities of treatment administered by Defendant were casually related to Decedent's passing, accordingly Prep Act immunity does not apply to plaintiff's claims, nor does it deprive this Court of subject matter jurisdiction. See Highsmith v. Woodhull Med. Ctr., [*5]210 N.Y.S.3d 923 (Sup. Ct. Kings. Cty. 2024)
Conclusion
For the detailed reasons set forth above, this Court finds that Defendant has established statutory immunity under the EDTPA. The Court further finds that the PREP Act is inapplicable to this case and does not deprive this Court of subject matter jurisdiction. Accordingly, Defendant's motion to dismiss (Mot. Seq. No. 001) is granted only to the extent that any claims of ordinary negligence or claims that rely upon a finding of ordinary negligence, are hereby dismissed with prejudice. However, Plaintiff's claims that sound in gross negligence, or that may rely upon a finding of gross negligence remain without prejudice to the filing of a summary judgment motion after the Note of Issue is filed. This constitutes the Decision and Order of the Court in relation to Motion Seq. No. 001. Any issues raised in that motion that have not been specifically addressed herein are hereby denied. the present matter shall next appear on this Court's calendar for a telephonic Preliminary Conference which shall be held on September 13, 2024 at 11:30 AM.
Dated: 7/29/24

Footnotes

Footnote 1:In this easily distinguishable "trip and fall" personal injury case, the Appellate Division, First Department held that the defendant failed to conclusively establish how the plaintiff's treatment was specifically impacted by its COVID-19 response. Notably, the plaintiff was not COVID-19 positive, and suffered a head injury when he fell while ambulating to a bathroom.