(August 29, 2017)

■ Perella Weinberg Partners LLC et al., Respondents, v Michael A. Kramer et al., Appellants, et al., Defendant. Michael A. Kramer et al., Counterclaim Plaintiffs-Appellants, v Perella Weinberg Partners LLC et al., Counterclaim Defendants-Respondents. Michael A. Kramer et al., Cross Claim

Plaintiffs-Appellants, v Joseph R. Perella et al., Third-Party Cross Claim Defendants-Respondents. Perella Weinberg Partners LLC et al., Plaintiffs, and Perella Weinberg Group LP, Respondent, v Michael A. Kramer et al., Appellants, et al., Defendants. Michael A. Kramer et al., Counterclaim Plaintiffs-Appellants, et al., Counterclaim Plaintiffs, v Perella Weinberg Partners LLC et al., Counterclaim Defendants, and Perella Weinberg Partners Group, Counterclaim Defendant-Respondent. Michael A. Kramer et al., Cross Claim Plaintiffs-Appellants, et al., Cross Claim Plaintiffs, v Joseph R. Perella et al., Third-Party Cross Claim Defendants-Respondents. [58 NYS3d 384]—

Order, Supreme Court, New York County (Shirley W. Kornreich, J.), entered July 19, 2016, which, insofar as appealed from as limited by the briefs, denied defendants Michael A. Kramer and Derron S. Slonecker's motion for summary judgment on the issue of plaintiff Perella Weinberg Partners Group LP's liability for unpaid deferred compensation, and granted plaintiffs' and third-party cross claim defendants' motion to dismiss defendants Kramer, Slonecker, Joshua S. Scherer and Adam W. Verost's counterclaims and cross claims for fraudulent inducement, Labor Law, and breach of fiduciary duty, unanimously modified, on the law, to deny plaintiffs' and third-party cross claim defendants' motions as to the claim for breach of fiduciary duty asserted by Kramer against Joseph R. Perella, Peter A. Weinberg, and Perella Weinberg Partners LLC, and otherwise affirmed, without costs.

We find that, for the reasons that follow, defendants Kramer and Slonecker have failed to establish that the Deferred Compensation Amount Election Forms dated May 31, 2011 (Election Forms) unambiguously modified the terms of the Deferred Compensation Agreements dated May 30, 2007 (DCAs) to require payment of the deferred compensation accounts upon any separation from service, thereby entitling them to immediate payment of their deferred compensation accounts.

The separate DCAs executed by Kramer and Slonecker were virtually identical, detailed, four-page documents, except with respect to the amount of their respective compensation allocations. Each DCA entitled defendants to annual interest pay-

ments, and in paragraph 4 defined the "payment date" for the deferred compensation as follows: "4. *Payment Date.* The Compensation, plus any accrued but unpaid interest thereon . . . shall be payable by the Company to the Partner in lump sum on the earlier to occur of (a) the fifth anniversary of the Effective Date [June 1, 2007], or (b) the date 15 business days following the Partner's separation from service with the Company without Cause or by reason of death or Disability . . . . The Compensation shall be forfeited in full upon a termination by the Company for Cause." Each DCA further defined termination for "cause" to include "violation . . . of any non-solicitation, non-competition or similar restrictive covenant." Additionally, in paragraph 5 (b), each DCA included a merger clause that contained the following language: *"Entire Agreement/Amendments.* This Agreement contains the entire understanding of the parties with respect to the Compensation . . . . This Agreement may not be altered, modified, or amended except by written instrument signed by the parties hereto. . . ."

Each subsequently executed Election Form was a single page document, printed with the employee's name, a space for signature and date, and a direction to "Please fill-in," and providing the employee with a choice to continue the Payment Date as set forth in the DCA, or alternatively, to defer receipt of payment, and the taxable consequences of it, until a later date, by checking the appropriate box. The substantive provisions of the Election Forms read, in their entirety, as follows:

"I elect to defer payment of _____ % of my Deferred Compensation Amount of $ _____ currently payable on June 1, 2012 (the 'Payment Date'), in accordance with the terms of the Deferred Compensation Agreement, as amended, dated May 30, 2007, until the earlier to occur of my separation form service or the fifth anniversary of the Payment Date.

"Please pay me the Deferred Compensation Amount on the Payment Date."

The form directed the employee to submit the form "to Human Resources" after electing its chosen option.

Here, the issue of defendants' alleged misconduct by violating the non-solicitation and noncompete provisions of the DCA and breaching their duty of loyalty as alleged in the complaint, which, if proven, would unquestionably constitute a termination for cause under the DCA, remains an issues of fact to be determined by the jury at trial. Kramer and Slonecker contend that the omission in the Election Form of the clause providing for forfeiture of any payment of deferred compensation upon

the employee's termination for cause renders that provision of the DCA superseded, and they seek summary judgment granting them payment of those amounts based upon their separation from service, without regard to the ultimate finding on the issue of whether they were terminated for cause.

On a summary judgment motion in a case involving interpretation of the terms of a contract, the Court of Appeals has instructed:

"The objective in any question of the interpretation of a written contract, of course, is to determine what is the intention of the parties as derived from the language employed. At the same time the test on a motion for summary judgment is whether there are issues of fact properly to be resolved by a jury. In general the courts have declared on countless occasions that it is the responsibility of the court to interpret written instruments. This is obviously so where there is no ambiguity.

"If there is ambiguity in the terminology used, however, and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury. On the other hand, if the equivocality must be resolved wholly without reference to extrinsic evidence the issue is to be determined as a question of law for the court" (*Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169, 171-172 [1973] [internal quotation marks and citations omitted]).

To be found ambiguous, a contract must be susceptible of more than one commercially reasonable interpretation (*Ellington v EMI Music, Inc.*, 24 NY3d 239, 244 [2014]). The existence of ambiguity must be determined by examining the "entire contract and consider[ing] the relation of the parties and the circumstances under which it was executed," with the wording to be considered "in the light of the obligation as a whole and the intention of the parties as manifested thereby" (*Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 60 AD3d 61, 66-67 [1st Dept 2008], *affd* 13 NY3d 398 [2009]). Further, in deciding the motion, "[t]he evidence will be construed in the light most favorable to the one moved against" (*Kershaw v Hospital for Special Surgery*, 114 AD3d 75, 82 [1st Dept 2013], citing, inter alia, *Young v New York City Health & Hosps. Corp.*, 91 NY2d 291, 296 [1998]).

In this case, the Election Forms, by their express language, provide that any deferral of payment of deferred compensation is to be made "in accordance with the terms of the Deferred Compensation Agreement." The DCAs, as noted, clearly provide

in paragraph 4 that deferred compensation is forfeited if the employee is terminated for cause, including violation of non-solicitation or noncompetition covenants. There is no mention in the Election Forms of any intent to override this provision.

Additionally, paragraph 5 of the DCAs specifically provides that their terms "may not be altered, modified, or amended except by written instrument signed by the parties hereto." At a minimum, it is commercially reasonable to view the Election Forms, on their face, to be informal human resources administrative forms. In any case, they are not "written instrument[s] signed by the parties [to the DCAs]," as they lack any signature of plaintiffs, as required by paragraph 5 in order to amend the DCAs. In light of that omission, it is certainly reasonable, given the informality of the form, and its direction to the employee to make an election and then return the form to the human resources department, to conclude that the form was meant solely to provide the employee with the option of amending the DCA to defer the payment date from 2012 to 2017, and not for amending the DCA in any other regard.

The terms of the Election Form support this construction. It enabled the employee to retain the option of choosing 2012 as the payment date, or alternatively, to choose to defer payment, as well as to defer its ensuing income tax obligations, for another five years, in essence, by postponing the date on which the wages were earned. By its express terms, it did not change any other provisions of the DCA.

Even if we were to examine the circumstances surrounding the making of the Election Form agreements, the result would be the same. According to the affidavit of plaintiffs' chief financial officer, Aaron Hood, the sole purpose of the Election Form was to enable the employee to choose or reject, one year prior to the payment date, the option to extend the term of the DCA and its maturity date for payment of the employee's provision of tax deferred income for another five years. He averred that none of the other provisions of the DCA were changed, including continued accrual and payment of interest. Hood maintained that he presented these terms to the management committee, with defendant Kramer present, prior to the distribution of the Election Forms to the employees. Indeed, it is uncontroverted that defendants, after making the election to defer their payment dates until 2017, continued to receive and accept the interest payments provided by their DCAs for the years 2012 and 2013, notwithstanding the absence of any mention of continuing interest payments in the Election Forms.

Defendants counter that the Election Form was an agree-

ment by which Perella Weinberg Partners Group LP (PWP) was to be given more time to make the DCA payments, and that the consideration for doing so was the implicit elimination of any restriction on the employees' entitlement to such payments.

It is certainly reasonable to conclude that if PWP intended to relieve the employee of the termination for cause limitation on payment, it would have so provided in the subsequent document, in accordance both with paragraph 5 of the DCA and the import of such a change to the parties' agreement under the DCA. Indeed, there is nothing in the Election Form which would suggest that employees who elected to retain the original 2012 payment date would avoid the operation of the termination for cause condition, nor why the differing options would carry such differing terms. It does not appear that the employees electing a further deferment of payment received no consideration for their deferral, such that relief from the discharge for cause limitation should be implied, as they would obtain five additional years of income tax deferral on the compensation, while continuing to receive interest payments. Any questions in this regard are not susceptible of resolution on a motion for summary judgment, however.

At the very least, the parties' differing positions as to the circumstances surrounding the execution of the Election Forms give rise to conflicting, reasonable commercial interpretations to be given to the Election Forms on this prediscovery motion, requiring denial of defendants' motion for summary judgment. Resort to extrinsic sources will be necessary for determination of the issue by the jury. And, as noted, the issue of whether defendants were terminated for cause remains a question for resolution at trial.

Similarly, even were we to find the election form to be ambiguous, defendants' reliance on the doctrine of contra proferentem, allowing ambiguities in a contractual instrument to be resolved against the drafter, is misplaced. That doctrine may only be applied as a last resort, if the extrinsic evidence is inconclusive (*Albany Sav. Bank, FSB v Halpin*, 117 F3d 669, 674 [2d Cir 1997]; *see Kenavan v Empire Blue Cross & Blue Shield*, 248 AD2d 42, 47 [1st Dept 1998]). Here, it cannot be assumed that all relevant extrinsic evidence has been presented at this stage of the proceedings.

Defendants seek as an alternative remedy rescission of the Election Forms on the ground that plaintiffs fraudulently induced them to sign them by misrepresenting that their compensation would not be subject to forfeiture.

A viable claim for fraudulent inducement requires the allegation of a "misrepresentation of a material fact, which was known by the [adversary] to be false and intended to be relied on when made, and that there was justifiable reliance and resulting injury" (*Braddock v Braddock*, 60 AD3d 84, 86 [1st Dept 2009]). The parties dispute whether defendants have alleged an actionable misrepresentation or justifiable reliance on same.

To fulfill the element of misrepresentation of material fact, the party advancing the claim must allege a misrepresentation of present fact rather than of future intent (*see Deerfield Communications Corp. v Chesebrough-Ponds, Inc.*, 68 NY2d 954, 956 [1986]). General allegations of lack of intent to perform are insufficient; rather, facts must be alleged establishing that the adverse party, at the time of making the promissory representation, never intended to honor the promise (*Laura Corio, M.D., PLLC v R. Lewin Interior Design, Inc.*, 49 AD3d 411, 412 [1st Dept 2008]).

Here, the facts alleged are insufficient to raise an inference of a present intent to deceive at the time the alleged misrepresentations were made in 2011. None of the misconduct alleged occurred until at least three years later.

With respect to justifiable reliance, the issue is one of fact, which, as noted, cannot properly be resolved at this prediscovery motion stage of the proceedings (*Braddock v Braddock*, 60 AD3d at 88; *Global Icons, LLC v Sillerman*, 45 AD3d 457 [1st Dept 2007]).

Defendants Kramer, Slonecker, Scherer and Verost's Labor Law claims were correctly dismissed because a wholesale withholding of payment is not a "deduction" within the meaning of Labor Law § 193 (*see Miles A. Kletter, D.M.D. & Andrew S. Levine, D.D.S., P.C. v Fleming*, 32 AD3d 566, 567 [3d Dept 2006]; *Sheehan v Square Mile Capital Partners*, 2013 WL 649418, *4 [Sup Ct, NY County, Feb. 19, 2013, No. 653120/2012]; *Wachter v Kim*, 2013 WL 144760 [Sup Ct, NY County, Jan. 11, 2013, No. 650532/08]; *Goldberg v Jacquet*, 667 Fed Appx 313, 314 [2d Cir 2016]; *O'Grady v BlueCrest Capital Mgt. LLP*, 111 F Supp 3d 494, 506 [SD NY 2015], *affd* 646 Fed Appx 2 [2d Cir 2016]; *Gold v American Med. Alert Corp.*, 2015 WL 4887525, *5, 2015 US Dist LEXIS 108122, *11-12 [SD NY, Aug. 17, 2015, No. 14 Civ 5485(JFK)]; *Monagle v Scholastic, Inc.*, 2007 WL 766282, *2, 2007 US Dist LEXIS 19788, *5 [SD NY, Mar. 9, 2007, No. 06 Civ 14342 GEL]; *see also Cuervo v Opera Solutions LLC*, 87 AD3d 426, 428 [1st Dept 2011, Moskowitz, J., concurring in part]). This issue was not addressed by the Court of Appeals in

*Ryan v Kellogg Partners Inst. Servs.* (19 NY3d 1, 16 [2012]) or by this Court in *Wachter v Kim* (82 AD3d 658, 663 [1st Dept 2011]).

The breach of fiduciary duty claim may proceed, but only as asserted by Kramer, because he was the only one harmed by the alleged pre-termination misconduct, and only as against Perella Weinberg Partners LLC—the general partner of PWP MC LP, the entity of which Kramer was a limited partner—and Perella and Weinberg, its control persons (*see In re Boston Celtics Ltd. Partnership Shareholders Litig.*, 1999 WL 641902, *4, 1999 Del Ch LEXIS 166, *10 [Aug. 6, 1999, No. CA 16511]). The parties agree that Delaware law governs this claim because the alleged duties stem from partnerships organized under Delaware law.

The breach of fiduciary duty claim is not duplicative of the breach of contract claims. The misconduct alleged in connection with the former is distinct from the misconduct alleged in connection with the latter (*see PT China LLC v PT Korea LLC*, 2010 WL 761145, *7, 2010 Del Ch LEXIS 38, *26 [Feb. 26, 2010, CA No. 4456-VCN]). In the breach of contract claims, defendants allege that plaintiffs breached their obligation to pay deferred compensation and their implicit obligation not to terminate the former employees for cause when in fact no such cause existed. By contrast, in the breach of fiduciary duty claim, defendants allege that, long before the subject terminations, plaintiffs and their representatives wrongfully sought to undermine Kramer's position at the firm in an effort to make him leave. In addition, the remedies sought are different (*see Stewart v BF Bolthouse Holdco, LLC*, 2013 WL 5210220, *15, 2013 Del Ch LEXIS 215, *50-51 [Aug. 30, 2013, CA No. 8119-VCP]; *Grunstein v Silva*, 2009 WL 4698541, *7, 2009 Del Ch LEXIS 206, *22 [Dec. 8, 2009, CA No. 3932-VCN]). On the breach of contract claims, defendants seek to recover the deferred compensation allegedly owed and other damages stemming from the wrongful terminations. By contrast, on the breach of fiduciary duty claim, defendants seek to recover damages relating to the alleged pre-termination misconduct of plaintiffs and third-party cross claim defendants.

We have considered defendants' remaining arguments and find them unavailing. Concur—Acosta, P.J., Sweeny, Renwick, Moskowitz and Kahn, JJ. ∎