| **Bedin v Verni** |
|:---:|
| 2024 NY Slip Op 32969(U) |
| August 21, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 159166/2022 |
| Judge: Richard G. Latin |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. RICHARD G. LATIN**

*Justice*

| | |
|---|---|
| PART | 46M |

-------------------------------------------------------------------------------X

JANET BEDIN

Plaintiff,

- v -

VITO ROCCO VERNI,

Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 159166/2022 |
| MOTION DATE | 06/09/2023 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55

were read on this motion to/for          DISMISSAL          .

Upon the foregoing documents, it is ordered that defendant's motion to dismiss is determined as follows:

In her complaint filed in this tort action (NYSCEF Doc. No. 1), plaintiff Janet L. Bedin asserts eight causes of action against defendant Vito Rocco Verni, as follows: (1) defamation of character, (2) fraudulent inducement, (3) intentional infliction of emotional distress, (4) harassment, intimidation and assault, (5) theft of property, (6) abuse of process, (7) misuse of order of protection and (8) illegal eviction. For each cause of action, plaintiff seeks $10 million in monetary damages. By the instant motion (motion sequence no. 001; NYSCEF Doc. No. 5), defendant seeks an order, pursuant to CPLR 3211 (a) (5) and CPLR 3211 (a) (7), dismissing the complaint and all causes of action in the entirety. For the reasons stated herein, the relief requested is granted in part and denied in part.

**159166/2022   BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No.  001**

**Page 1 of 23**

**Background**

The following summary of the alleged background facts, unless otherwise indicated, is based primarily upon the complaint. According to the complaint, this tort action is based upon the "personal relationship" between plaintiff and defendant, and their relationship between 2019 and 2021 (approximately three years) in particular, when "they lived together as a couple" in defendant's home located in Rye, New York (Complaint, ¶ 3).

Plaintiff was, and continues to be, a tenant in a New York City apartment building once owned by defendant from 1976 until the late 1990s (*id.*, ¶ 5). In 1976, while plaintiff was 21 years old and became a tenant of the building, defendant (who was 38 years old then) kept calling her to "inspect" the apartment, which led to an on-and-off, long-term relationship between them (*id.*, ¶¶ 6-8). Plaintiff broke off the relationship with defendant several times, but he continued to pursue her and tried to "re-establish their intimate relationship despite his married state" (*id.*, ¶ 9). In late 2018, defendant told plaintiff that his wife had died and he became single; soon thereafter, he "cajoled and induced" her to leave New York City and to move in and live with him at his "sprawling mansion" located in Rye, New York (*id.,* ¶¶ 10-11).

Decades earlier, in 1976, plaintiff began her career as a model and television actress, and later transitioned as a "business development executive" (*id.*, ¶ 14). She was "gainfully employed" and held high-profile, corporate and government positions from 1991 to 2015 (*id.*, ¶¶ 15-18). Understanding her "illustrious career" and "standard of living," defendant promised to support plaintiff, when she would no longer be part of the work force, "at the same level at which she was supporting herself throughout the years" (*id.*, ¶ 19). Soon after plaintiff moved into the Rye home in 2019, defendant began to renege on his promise to take care of her financial needs,

**159166/2022 BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No. 001**

**Page 2 of 23**

2 of 23

exercised control over her everyday habits, physically and emotionally abused her, and assaulted her on at least two occasions (*id.*, ¶ 20).

While they lived together in Rye, plaintiff provided defendant with daily personal care, assisted him with medication management and medical appointments, accompanied him to social events, as well as helped him with his "business and non-profit board seats" (*id.*, ¶ 21). Yet, he did not want her to socialize with her former friends and colleagues, and only allowed her to socialize with his (*id.*, ¶ 25). In 2021, she became aware that he "rekindled a relationship with another woman" and was "meeting his new paramour" (*id.*, ¶¶ 26, 33).

On December 7, 2021, defendant's attorney Patricia Carroll showed up at the Rye home and requested plaintiff to leave within 3 days or the locks would be changed; but there was no mention of any "family offenses" nor of defendant's health as the reason for him wanting her to leave (*id.*, ¶¶ 27-28). Plaintiff was shocked, and thus consulted with her attorney Andrew Romano, who wrote to Carroll to inform her that defendant needed to go to court to evict plaintiff (*id.*, ¶¶ 29-30). Realizing that plaintiff was entitled to the due process of law, as she had lived in his Rye home for much longer than 30 days (and there was a moratorium on evictions in New York because of the pandemic), defendant went to the Westchester Family Court on December 14, 2021 and manufactured "false allegations against Plaintiff that she had committed family offenses against him in order to circumvent the law" (*id.*, ¶ 32). Defendant filed for an ex-parte temporary order of protection, based on "outright lies wherein he alleged that Plaintiff owned an apartment in New York City," that "Plaintiff never lived with him," and that "Plaintiff hit him" in the summer of 2021 (*id.*, ¶¶ 34, 37). The Family Court, however, told defendant, on December 14, 2021, that it was not going to evict Plaintiff (*id.*, ¶ 36).

**159166/2022   BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No.  001**

**Page 3 of 23**

Based on the foregoing general allegations, which are elaborated in greater detail in the complaint, plaintiff asserts eight causes of action against defendant, as follows: (1) defamation of character (*id.*, ¶¶ 38-42); (2) fraudulent inducement (id., ¶¶ 43-69); (3) intentional infliction of emotional distress (*id.*, ¶¶ 70-84); (4) harassment, intimidation and assault (id., ¶¶ 85-93); (5) theft of property (*id.*, ¶¶ 94-96); (6) abuse of process (id., ¶¶ 97-110); (7) misuse of order of protection (*id.*, ¶¶ 105-110); and (8) illegal eviction (*id.*, ¶¶ 111-115).

**Applicable Legal Standards**

As noted above, defendant moves to dismiss the complaint and all causes of action therein pursuant to CPLR 3211 (a) (5) and 3211 (a) (7). While CPRL 3211 (a) (5) provides that a cause of action can be dismissed based upon various grounds, such as arbitration and award, collateral estoppel, res judicata or statute of limitations, defendant does not identify which causes of action should be dismissed based upon CPLR 3211 (a) (5) and the grounds therefor.

On the other hand, in considering a CPLR 3211 (a) (7) motion to dismiss, the court is to determine whether the pleading states a cause of action (*Sokoloff v Harriman Estate Dev. Corp.*, 96 NY2d 729 [2001]). "The motion must be denied if from the pleadings' four corners, factual allegations are discerned which taken together manifest any cause of action cognizable at law" (*Richbell Info. Servs., v Jupiter Partners L.P.*, 309 AD2d 288, 289 [1st Dept 2003], quoting *511 W. 232nd Owners Corp. v Jennifer Realty Corp.*, 98 NY2d 144, 151-152 [2002]). The pleadings are given a liberal construction, and the courts "accord plaintiffs the benefit of every possible favorable inference" (*Leon v Martinez*, 84 NY2d 83, 87 [1994]; *see also Nonnon v City of New York*, 9 NY3d 825, 827 [2007] [dismissal warranted only if pleading failed to allege facts that fit within any cognizable legal theory]). While factual allegations are given a favorable inference, bare legal conclusions and inherently incredible facts are not entitled to preferential treatment

**159166/2022  BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No.  001**

**Page 4 of 23**

4 of 23

(*Matter of Sud v Sud*, 211 AD2d 423, 424 [1st Dept 1995]). Whether the complaint or claim will later survive a motion for summary judgment, or whether the plaintiff will ultimately prove the claim, is irrelevant to the determination of a pre-discovery CPLR 3211 motion to dismiss (*12 Baker Hill Rd., Inc. v Miranti*, 130 AD3d 1425, 1426 [3d Dept 2015]).

Notably, a review of defendant's papers reflects that he seeks to dismiss most, if not all, of the complaint's causes of action for failure to state a claim under CPLR 3211 (a) (7), as discussed below. It is also noteworthy that defendant acknowledges in his affidavit that the instant motion to dismiss is made pre-answer (Def. Affidavit, ¶ 75; NYSCEF Doc. No. 6]).

**Discussion**

Defendant's Brief in Support of Motion to Dismiss and Plaintiff's Opposition to Motion

In his motion seeking dismissal of the complaint, defendant submits a supporting memorandum of law (Def. Brief; NYSCEF Doc. No. 23), his sworn affidavit (i.e. Def. Affidavit), together with annexed exhibits (Def. Exhibits A to P; NYSCEF Doc. Nos. 7-22).

In the "introductory" section of his brief, defendant asserts that the gist of this action is "the parties' limited social relationship has devolved into a Fatal Attraction scenario," and this "purely social arrangement" began in 2019 or 2020, when they socialized "a few days a week and nothing more" (Def. Brief at 1; referencing Def. Affidavit). He also asserts that Plaintiff's apartment in New York City was a "hot spot for Covid" and, to do her a favor, he allowed her to stay at his Rye home "temporarily so that she would not need to travel back and forth to the City and risk being exposed to Covid" (*id.*). He further asserts that because her brother was hospitalized in a facility near Rye, it was easier for her to visit him from Rye than from the City (*id.* at 1-2). In the summer of 2021, the relationship worsened to the point that he insisted she leave his Rye home and return to her City apartment, which led to "multiple verbal altercations and physical assaults" by her upon

**159166/2022   BEDIN, JANET vs. VERNI, VITO ROCCO**                    **Page 5 of 23**
**Motion No.  001**

5 of 23

him (*id.* at 3). He was then "forced to seek" an order of protection from the Westchester Family Court and to commence a "license proceeding in the Harrison Justice Court to remove [her] from his home" (*id.*). In addition, defendant asserts that he is "a pillar of the community and a veteran," and will not succumb to her "extortionary tactics" in trying to shake him down with lawsuits alleging millions in damages (*id.*).

Plaintiff filed her brief in opposition to defendant's motion (Plf. Opposition; NYSCEF Doc. No. 52), which is supported by her sworn affidavit and exhibits 1-18 (Plf. Affidavit and Plf. Exhibits; NYSCEF Doc. Nos. 33-51), the substance of which will be discussed below.

Before analyzing whether all of the complaint's causes of action should be dismissed, the following statements in the defendant's affidavit are noteworthy: (1) the instant lawsuit is plaintiff's attempt to "shake me down," first for $750,000 and now for $80 million; (2) this action is plaintiff's "second bite at the apple," as she had previously filed an identical action in the Westchester Supreme Court where it was dismissed in its entirety; and (3) the Family Court that issued orders of protection warned plaintiff to "stay away from me" and told her that "you are not married . . . it is not your home . . . whatever relationship you were in was not working out . . . this must end . . . you are going to end up in jail and I am shocked that you haven't already . . . it has to stop" (Def. Affidavit, ¶¶ 3-7 and 54-60; quoting hearing transcript).

On the other hand, it should be noted that in the plaintiff's affidavit, while admitting that the $80 million figure is "untenable," she also stated that "I love Vito with all my heart [but he] abused and bullied me. Money cannot quiet my post-traumatic stress and nightmares that I still feel today" (Plf. Affidavit at 2). Also, while it is true that the Westchester Supreme Court dismissed her action filed in that court, which asserted identical claims against defendant, the court decision (Westchester Decision; NYSCEF Doc. No. 7) reflected that the dismissal was based primarily

**159166/2022 BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No. 001**

**Page 6 of 23**

6 of 23

upon procedural grounds (rather than addressing the merits of such claims), and that while the Family Court issued orders of the protection directing plaintiff to stay away from defendant, it also authorized her to go to his home (on several occasions) to retrieve her personal property (Westchester Decision at 3-5 and 9-18). The Westchester Decision also noted that the Harrison Justice (Housing) Court granted defendant's motion to withdraw his petition to evict plaintiff in the "License Proceeding," because he informed the court that he sold the house after he commenced that action, which ended the court's jurisdiction (*id.* at 5).

In light of the foregoing, defendant's statement -- that this action is plaintiff's "second bite at the apple" and that this Court should dismiss the complaint with prejudice and bar her from filing any further action against him without first obtaining court permission -- appears overly broad and inappropriate. Instead, this Court will analyze the Complaint's causes of action and deal with them on the merits (or the lack thereof), as discussed below.

The First Cause of Action – Defamation of Character

The complaint alleges that defendant has publicly stated: (1) Plaintiff feigned her illness to achieve her goals; (2) she slept her way to the top in order to achieve her employment positions; (3) she is an "unhinged . . . litigious" woman; and (4) defendant's repeated statements were part of a "smear campaign not only to destroy plaintiff's professional reputation but [also] to destroy her character" (Complaint, ¶¶ 38-42).

In support of his motion to dismiss, defendant argues that a plaintiff asserting a defamation claim must show (1) a false statement; (2) published to a third party; (3) without privilege or authorization; and (4) causing harm to the plaintiff, unless the statement is of the type of publication actionable regardless of harm (Def. Brief at 5 [emphasis added]; citing *Stepanov v Dow Jones & Co.*, 120 AD3d 28, 34 [1st Dept 2014]). With respect to the third factor, defendant adds

that an individual's statements made in a judicial proceeding are entitled to "absolute immunity, which entirely immunizes [the individual] from liability in a defamation action, regardless of the declarant's motive" (Def. Brief at 6; citing *Stega v New York Downtown Hosp.*, 31 NY3d 661, 669 [2018]). Defendant further asserts that, pursuant to CPLR 3016 (a), a defamation claim must set forth in the complaint the "particular words complained of" and the "time, place and manner of the false statement" (*id.*; citing statute and caselaw). Applying the foregoing factors to this case, defendant argues that: (1) the purported defamatory statement described in paragraph 40 of the complaint (i.e. Plaintiff was "unhinged, unglued . . . ") was "from a court transcript" made in a judicial proceeding, and thus is protected by "absolute privilege;" (2) as for the remaining statements, the complaint fails to set forth the particular words used, as well as their time, place and manner, as required by CPLR 3016 (a); and (3) to the extent such statements might have been made, they were made in judicial proceedings, including "the Family Court Proceeding, the License Proceeding or the Westchester County Supreme Court Action," and they "were pertinent to the litigation" (*id.* at 8-9). Defendant argues that, based on the foregoing, dismissal of the defamation claim is warranted (*id.* at 9).

In opposition to defendant's brief and defendant's affidavit, plaintiff contends that the monetary relief here requested is to restore her reputation (due to his defamatory statements), to pay down the debts she accumulated (due to litigations initiated by him), and to make her financially sound again (Plf. Affidavit at 2-3). As to his allegation that she is a "litigious" person, plaintiff counters that the litigations were started by defendant's ex-parte application to the Family Court for orders of protection (from December 2021 to July 2022) and his petition to expel her from the Rye home in the Housing Court, where he did not tell the courts of their "committed and lived-together relationship," as well as the fact that she was packing up her belongings and

**159166/2022  BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No. 001**

**Page 8 of 23**

8 of 23

[* 8]

planning to leave (*id.* at 3-4). She also states that she decided to "hit back" against defendant by filing a complaint in the Westchester County Supreme Court, where she acted pro se because she could no longer afford to pay legal fees (*id.* at 4). She further states that, on October 21, 2022, the Westchester County Supreme Court issued a decision that, among other things, dismissed her complaint and amended complaint, and denied defendant's motion to dismiss; she then filed the instant complaint in this Court shortly thereafter (*id.*).

In addition, in her opposition papers, plaintiff contends (1) the defamatory statements made by defendant's attorney "are not subject to any type of privilege because Mr. Grayson has waived any claim to privilege," and since he was "a social friend of Vito and me," he will be called as a "hostile witness" and will have to "tell the truth that he knew Vito and me as a bonded couple for years;" (2) Defendant has publicly accused her of engaging in sexual misconduct by "sleeping her way" to the top, "faking illness" to achieve her gains, and being litigious, unhinged, greedy, dumb, with a "fatal attraction syndrome;" and (3) the foregoing elements, "individually and collectively," satisfy the grounds for a defamation claim, which is "supported with witness statements" (Plf. Affidavit at 11; Plf. Opposition at 4-5).

While asserting that her defamation claim is supported by witness statements, plaintiff does not specifically identify in her opposition brief which non-party witness statements do so. A review of the five filed statements (NYSCEF Doc. Nos. 43, 46, 47, 50 and 51) reveals that two were unsworn and unnotarized (NYSCEF Doc. Nos. 46 and 47). In reply to plaintiff's opposition (Def. Reply; NYSCEF Doc. No. 54), defendant urges these two statements "not be considered on the motion" (*id.* at 8). A review of the three sworn and notarized statements reflects that one of them does not address the defamation claim: the affidavit by a former police supervisor, Shawn Harris, who was retained by plaintiff to help her retrieve her personal property from the Rye home

**159166/2022  BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No.  001**

**Page 9 of 23**

9 of 23

pursuant to a court order (NYSCEF Doc. No. 43). The other two statements reflect the following: (1) the affidavit by plaintiff's friend, Beverly Henry, who stated, among other things, that Vito told her that he "loved Janet" and asked Janet to move in with him so that Janet could be closer to her sick brother, and that she was "shocked" when Janet told her Vito had forced Janet out of the Rye home the night before Christmas by filing a "false Petition for a Temporary Order of Protection" and swearing that Janet hit him, while "Janet took good care of Vito" (Henry Affidavit; NYSCEF Doc. No. 50); and (2) the affidavit by Scott Evans, who stated, among other things, that he knew both Janet and Vito, and based on his past conversations with Vito, he learned about "Janet's history of going above and beyond when it came to taking care of her parents and her ill brother" and that he was "shocked" to read Vito's affidavit "mischaracterizing Janet as litigious" when she, as executor, tried to obtain justice for her mother's estate where the defendant hospital knew of her mother's pancreatic cancer but never told the family, and that "[Vito] made up a story for the police in order to have a break up with [Janet]" (Evans Affidavit; NYSCEF Doc. No. 51).

While Henry's affidavit and the Evans' affidavit, as well as the plaintiff's affidavit, amplify portions of the complaint, they do not identify the "time, place and manner" the purportedly defamatory words (such as "feigning her illness" and "sleeping her way") were spoken or used by defendant, as required by CPLR 3016 (a) (*Tsatskin v Kordonsky*, 189 AD3d 1296, 1299 [2d Dept 2020] [defamation claim must set forth the particular words used and allege the time, place and manner of the false statement and specify to whom it was made]). Also, plaintiff does not dispute defendant's argument that the purportedly defamatory words were made in judicial proceedings and are entitled to immunity; instead, she merely contends, without citing caselaw authority, that the words spoken by defendant's attorney (Grayson) are "not subject to any type of privilege" because he "waived any claim to privilege" (Plf. Affidavit, ¶ 21; Plf. Opposition at 4-5). Her

**159166/2022  BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No.  001**

**Page 10 of 23**

failure to substantiate her defamation claim militates against her, even though defendant does not argue that the purportedly defamatory statements spoke the truth, which also would have provided an absolute defense (*Konrad v Brown*, 91 AD3d 545, 546 [1st Dept 2012 ][statement's truth is an absolute defense]). Accordingly, the defamation claim is dismissed pursuant to CPLR 3211 (a) (7).

<u>The Second Cause of Action – Fraudulent Inducement</u>

The complaint alleges that defendant persuaded plaintiff to give up her job and career to move into his Rye home, with promises that he would take care of all her financial needs, but soon after she moved in, he reneged on his promises and withheld financial help to the point of forcing her to dip into her own savings to pay for her medical bills (Complaint, ¶¶ 45-47). The complaint also alleges, among other things, that after moving in, plaintiff "dutifully kept up her end of the bargain" by taking care of defendant's daily medical and social (including sexual) needs, and that she "sincerely believed" that her moving in would lead to a caring relationship with defendant forever (*id.*, ¶¶ 48-49). In sum, the complaint alleges that plaintiff, in good faith, relying on his promises and believing that the cards, letters and expensive jewelry he gave her were signs of his true love, was fraudulently induced into giving up her successful career, and that she suffered significant past, present and future financial losses (*id.*, ¶¶ 68-69).

In his moving brief, defendant argues that for a fraudulent inducement claim, a plaintiff must show there is a "knowing misrepresentation of a material present fact" that is intended to deceive the plaintiff, causing the latter to act on it and resulting in injury (Def. Brief at 9-10; citing, inter alia, *Perella Weinberg Partners, LLC v Kramer*, 153 AD3d 443, 449 [1st Dept 2017] [Perella]). Defendant also argues that, a plaintiff's sacrifice of career in return for defendant's false promises related to their future together does not constitute reasonable reliance because "the law

**159166/2022 BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No. 001**

Page 11 of 23

11 of 23

does not recognize a cause of action for sacrificing career opportunities in order to act as a wife" (*id.* at 11; citing, inter alia, *Farre v Lours*, 2020 WL 7041785 at *10 [Sup Ct, NY County 2020] [internal quotation marks and citations omitted]). Because the complaint does not allege "a misrepresentation of present fact, rather than of future intent" when the alleged promises were made to plaintiff, defendant argues that this claim must be dismissed.

Defendant's reliance on *Perella* is misplaced. Notably, while stating that the alleged facts in that case were "insufficient to raise an inference of a present intent to deceive," the court also indicated that the "none of misconduct alleged occurred until at least three years later," and the issue of "justifiable reliance" could not be resolved at the pre-discovery stage (*Perella*, 153 AD3d at 449). Here, the complaint and the plaintiff's affidavit state that "almost immediately (within a few months)" after plaintiff moved in with defendant, he reneged on his promises to take care of her, which forced her to dip into her savings by cashing portions of her IRAs to pay for her medical bills (Complaint, ¶¶ 43-44, 49 and Plf. Affidavit, ¶ 27 [referencing copies of IRA withdrawals; Plf. Exhibit 8; NYSCEF Doc. No. 41]). In his reply, defendant failed to address such withdrawals; also, the "almost immediately" time-frame may be inferred to reflect a proximate expression of a present intent, as opposed to the misconduct in *Perella* that did not occur "until more than three years after" the misrepresentation (Def. Reply at 8-9). Indeed, while plaintiff alleges that defendant proclaimed his love for her in February 2019 and asked her to move in with him (Complaint, ¶ 44), defendant states that their "limited social relationship" began "sometime in 2019 or 2020" (Def. Brief at 1), which also may be inferred to reflect the proximate expression of a "present intent" to misrepresent his promise.

Moreover, plaintiff points to *Braddock v Braddock*, in which the court stated that whether the defendant intended his promise be fulfilled was a fact that "should not be determined on a

**159166/2022 BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No. 001**

**Page 12 of 23**

CPLR 3211 motion," and that the court "must recognize that a present intention not to fulfill a promise is generally inferred from surrounding circumstances, since people do not ordinarily acknowledge that they are lying" (60 AD3d 84 [1st Dept 2009]). Also, based on the plaintiff's allegations that he "sacrificed his lucrative career and the opportunities available to him" and his defendant cousin "induced him to make these enormous sacrifices by falsely representing that they would essentially jointly own and run the company," the court held that these allegations, among others, stated a cause of action of fraudulent inducement (*id.* at 84). Here, defendant fails to distinguish and discuss *Braddock* in detail; instead, he merely argues that "Plaintiff's reliance is misplaced" and "the motion to dismiss [in that case] was denied based on the alleged surrounding circumstances" (Def. Reply at 8).

Defendant's other argument that "the law does not recognize a cause of action for sacrificing career opportunities in order to act as a wife" (Deft. Reply at 9; quoting *Jennings v Hurt*, 160 AD2d 576, 578 [1st Dept 1990]) is also unpersuasive. The *Jennings* ruling as made in the following context: the plaintiff's cause of action, which claimed that "defendant falsely promised to support plaintiff if she would have his child and give up her career, [was] void as against public policy" (160 AD2d at 578). Here, the complaint and the plaintiff's affidavit do not allege that her fraudulent inducement claim is based on defendant's false promise to support plaintiff if she would have his child and give up her career; also, it is nowhere near defendant's assertion that "this is exactly what Plaintiff is alleging herein" (Def. Reply at 9). Therefore, the holding in *Jennings* is inapposite and defendant's reliance thereon is misplaced. Accordingly, the fraudulent inducement claim should not be dismissed at this juncture.

159166/2022   BEDIN, JANET vs. VERNI, VITO ROCCO
Motion No.  001

Page 13 of 23

<u>The Third Cause of Action – Intentional Infliction of Emotional Distress</u>

The complaint alleges that defendant's "vicious, vindicative actions were performed with the intent to cause or in disregard of the probability of causing Plaintiff extreme emotional distress pain" (Complaint, ¶ 70). For example, the complaint alleges, among other things: (1) when plaintiff was late returning home, defendant would accuse her of meeting other men and cheating on him; (2) he would take her expensive clothing and intimate ware and throw them in his dirty garbage shed; (3) he would criticize her sexual performance and demand her to be bolder; (4) he repeatedly made sexist accusations that she f**ked her way to the top in order to become a senior executive; (5) he would impose tremendous hurt upon her and later express undying love and adoration for her, which kept her in a see-saw stream of emotions; (6) he intentionally mischaracterized her lawsuit commenced on behalf of her mother's estate as "litigious," knowing it would cause great emotional pain to her; and (7) as a result of his misconduct, she suffered "psychological confusion and emotional pain and has sought psychotherapy for victims of domestic violence" (*id.*, ¶¶ 71-84).

In support of his motion to dismiss this claim, defendant argues (1) liability on such claim is found only where the conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency; (2) the claim must be supported by medical evidence, not the mere recitation of speculative claims; (3) the courts are reluctant to allow recovery absent a "deliberate and malicious campaign of harassment or intimidation;" and (4) "mere threats, annoyance or other petty oppression . . . are insufficient to constitute the tort of intentional infliction of emotional distress" (Def. Brief at 12-14; citing cases). Defendant asserts that (1) even after deeming all the complaint's allegations are true and drawing all inferences in plaintiff's favor, these allegations do not rise to the level of "extreme and outrageous conduct" which the courts

**159166/2022 BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No. 001**

**Page 14 of 23**

14 of 23

have described; and (2) plaintiff failed to submit medical evidence to support she actually suffered emotional injury, other than the vague and conclusory allegation that she has "sought psychotherapy for victims of domestic violence" (*id.* at 14-16).

In opposition, besides repeating the complaint's allegations, plaintiff submitted a letter from a Weill Cornell Hospital doctor (who treated her breast cancer) that advised "whomever it may concern" not to ask her to lift heavy objects for three months (Plf. Affidavit, ¶ 28; Plf. Exhibit 9: NYSCEF Doc. No. 42). Plaintiff asserts that this letter is intended to "counteract" defendant's statement that she was pretending to be ill to avoid work (*id.*). Next, plaintiff points to the affidavit by Shawn Harris (the former police officer she hired to help her retrieve her property from defendant's home pursuant to the Family Court order) as evidence that shows "Vito threw my belongings out [into the dirty garbage shed] even though he knew that we were coming back to retrieve the rest of belongings;" and "Vito was uncooperative, refusing access etc. over several times where I was supposed to be let in . . . despite Court orders" (*id.* at ¶ 30; referencing Harris Affidavit; Plf. Exhibit 10: NYSCEF Doc. No. 43).

The doctor's letter, on its face, does not support her claim of intentional infliction of emotional distress and fails to substantiate her assertion that she had "sought psychotherapy for victims of domestic violence." Similarly, the Harris affidavit does not support her claim because the misconduct she claims defendant had committed amounted to nothing more than lying, annoying and being uncooperative, which does not rise to the level of "outrageous in character" and to be "regarded as atrocious and utterly intolerable in a civilized community" (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303 [1983] [internal citation omitted]). Accordingly, this cause of action should be dismissed pursuant to CPLR 3211 (a) (7).

**159166/2022   BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No.  001**

**Page 15 of 23**

<u>The Fourth Cause of Action – Harassment, Intimidation and Assault</u>

The complaint alleges, among other things: (1) in June 2020, when suffering from "severe mood swings," defendant slammed a door in plaintiff's face, causing her to fall and sustain injuries; (2) in October 2021, he drove the car in reverse while she was getting into it, which caused her to be struck by the car's door and this incident left a scar on her face; (3) he constantly criticized her about everything and exercised complete control over her; (4) he frequently accused her of cheating on him and publicly interrogated her in front of her friends about this; and (5) his harassment, intimidation and verbal assaults have caused her to believe that he wanted to destroy her and, as a result, she has suffered emotional pain and developed post-traumatic stress syndrome (Complaint, ¶¶ 85-93).

In his moving brief, defendant argues that New York does not recognize a common law cause of action to recover damages for harassment or intimidation (Def. Brief at 16; citing *Daulat v Helms Bros., Inc.*, 18 AD3d 802, 803 [2d Dept 2005]). He also argues that "assault" is an "intentional attempt" to injure and there must be proof of an act placing the plaintiff in imminent danger of harmful contact (*id.*; citing cases). He asserts that the complaint alleges two incidents constituting assault, but fails to allege intent on his part to cause her injury. He further asserts that under CPLR 215 (3), there is a one-year limitations period for an assault claim, but since the alleged incidents occurred on October 3, 2021 and in June 2020, and this action was commenced on October 26, 2022, the assault claim is time-barred (*id.* at 17).

Plaintiff does not cite opposing caselaw to challenge defendant's argument that there is no common law cause of action for harassment or intimidation in New York. Thus, these two "claims" should be dismissed (*Edelstein v Farber*, 27 AD3d 202, 202 [1st Dept 2006] [New York does not recognize harassment claim]). Also, plaintiff fails to contest defendant's argument that

**159166/2022   BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No.  001**

**Page 16 of 23**

she must prove intent on his part which caused her to become apprehensive of being injured on account of those two incidences, and her mere assertion that her claim is for "verbal assault" is not supported by a citation to caselaw. Her failure to address the one-year statute of limitations defense in her opposition is also a basis for a dismissal of this claim. Accordingly, the fourth cause of action for "harassment, intimidation and assault" should be dismissed.

The Fifth Cause of Action – Theft of Property

The complaint alleges that (1) defendant demanded that plaintiff place all her jewelry, including her father's war medals, be kept and locked in a closet in the Rye home for "safety;" (2) she could remove items from the closet and return same to the closet afterwards only in his presence because he was the only one with the key to the closet; (3) when she returned to the Rye home to retrieve her personal properties on December 14, 2021, he unlocked the closet in the presence of the police but none of her valuables were in the closet; and (4) she suffers monetary damages (approximately $55,000) for the theft of her jewelry, but that figure does not include the value of family heirloom and other memorabilia (Complaint, ¶¶ 94-96).

In his moving brief, Defendant argues that New York does not recognize a claim for theft of property, and to the extent that Plaintiff's claim sound in "conversion," such claim fails under CPLR 3211 (a) (7). Specifically, he argues that a conversion claim has two key elements: (1) plaintiff's possessory right in the property and (2) defendant's dominion over such property or interference with plaintiff's right (Def. Brief at 18, citing, inter alia, *Coavito v New York Organ Donor Network, Inc.*, 8 NY3d 43, 50 [2006]). He also argues that the items at issue were the "same items" she had told him were "stolen by the New York County Sheriff" when they evicted her from her apartment in New York City (*id.* at 19). He further asserts that because the complaint

**159166/2022 BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No. 001**

**Page 17 of 23**

17 of 23

fails to allege that he exercised "unauthorized dominion over the jewelry," this claim must be dismissed (*id.*).

In opposition, plaintiff contends that "theft of property" is also known as "conversion," which occurs if possession of the property is originally lawful, "but defendant refuses to return the property after a demand" (Plf. Opposition at 10-11; citing, inter alia, *Matter of White v City of Mount Vernon*, 221 AD2d 345, 346 [2d Dept 1995]).  She also contends that even though she voluntarily gave him the jewelry and her family memorabilia for safe keeping, and when she was evicted from his home, he said her valuables were not there, but he did not "address the fact that only he had access to the closet" (*id*. at 11).  She further states that she brought all of her valuables to his home and none of such items were at her New York City apartment "because of her security fears at that building" (*id.*).  In her affidavit, she asserts that he "actually confiscated them" because he admired her father's war medals greatly and that "he can brag to his friends about his [own] heroism in the military" (Plf. Affidavit, ¶ 34).

In his reply, defendant does not challenge the proposition of law cited in the plaintiff's opposition, nor does he dispute her assertion that he was the only person having the key to the closet where her valuables were purportedly stored in his Rye home (Def. Reply at 12-13).

Whether the items at issues were taken or impounded by the New York County Sheriff (as Defendant argues) or misappropriated by defendant (as Plaintiff contends) is a disputed issue of fact that cannot be resolved at this juncture.  In any event, in considering a CPLR 3211 (a) (7) motion to dismiss, the plaintiff's pleadings should be given a "liberal construction" and the court should afford the plaintiff "the benefit of every possible favorable inference" (*Leon v Martinez*, 84 NY2d 83, 87 [1994]).  Accordingly, this "theft of property" or "conversion" claim should not be dismissed at this juncture.

**159166/2022   BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No.  001**

**Page 18 of 23**

18 of 23

<u>The Sixth and Seventh Causes of Action – Abuse of Process and Misuse of Order of Protection</u>

As for the sixth (abuse of process) and seventh (misuse of order of protection) causes of action, the complaint contains substantially similar allegations for both: (1) defendant lied in the Family Court (and the Housing Court) to induce the courts to issue process (including orders of protection), requiring plaintiff to stay away from defendant and be removed from his home, even though she had lived with him for over three years and stored her belongings there; (2) he intended to use and/or abuse this process to his advantage but to her detriment, even though he knew that she was "compromised with her age and breast cancer" and "with no money or a place to stay;" and (3) because of his lies, she was denied her due process in the courts, which caused her trauma, needed medical care and loss of reputation (Complaint, ¶¶ 97-110).

In his brief, defendant argues that New York does not recognize a claim for "misuse of order of protection," and the "abuse of process" claim is "duplicative" of the other claim (Def. Brief at 19). Defendant points out that the "abuse of process" claim has three key elements: (1) regularly issued process (civil or criminal); (2) to do harm without justification; and (3) using the process in a "perverted manner to obtain a collateral objective" (*id.* at 19-20; citing *Curiano v Suozzi*, 63 NY2d 113, 116 [1984]). He also points out that "a malicious motive alone, however, does not give rise to a cause of action for abuse of process" (*id.*; quoting *Curiano*). As to the four orders of protection issued by the Family Court, defendant argues that three judges of that court found that plaintiff posed an immediate threat to him, which led to the issuance of such orders for the "proper purpose" of keeping her away from him (*id.* at 22). He further argues that it is "irrelevant" that plaintiff alleges that he was "motivated by malice" in seeking the "unjustified" orders because the court action commenced or initiated the process, not abuse of the process; thus,

**159166/2022 BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No. 001**

**Page 19 of 23**

19 of 23

these claims should be dismissed in that they "do not allege post-accusation acts," but "only allege an improper purpose to bring process and nothing more" (*id.* at 22-23).

To amplify/clarify the complaint, plaintiff asserts in her affidavit: (1) as to the abuse of process claim that involved two separate court actions initiated by defendant (in Family Court and in Housing Court), both actions sought to achieve the same purpose (i.e. to get her out of his Rye home); (2) in the Family Court action commenced on December 14, 2021, defendant lied to that court in an ex-parte petition that they never lived together but was in an intimate relationship, which enabled him to obtain an emergency order of protection; (3) he also went to the Housing Court to try to evict her, asked his attorney (Patricia Carroll) to prepare a formal "10-day notice" for her to vacate his home by December 10, 2021 (Plf. Exhibit 12; NYSCEF Doc. No. 45), and in his petition filed with the Housing Court on December 22, 2021, he admitted that they lived together in his home (Plf. Exhibit 15; NYSCEF Doc. No. 48), and later he "ran out the clock with delays" until he closed the sale on his home so as to end the court's jurisdiction in the eviction action; (4) even though he knew she was leaving his home because he saw her packing her belongings, he continued his "eviction" efforts via the order of protection when, on December 14, 2021, the police "burst" into the Rye home while waving an order of protection and threatened her with jail unless she vacated immediately (Plf. Exhibits 13, 14 and 15; NYSCEF Doc. Nos. 46, 47 and 48);  and (5) he lied to the Family Court (Plf. Exhibit 16 [hearing transcript]; NYSCEF Doc. No. 49) in obtaining the orders of protection, and "weaponized the legal system" to bankrupt, confuse and harm her without excuse, so as to shame and humiliate her while "he looked like a good Samaritan" (Plf. Affidavit, ¶¶ 34-43).  Notably, however, in her opposition brief, plaintiff does not cite legal authority for these two inter-related claims (except states the three elements for

**159166/2022   BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No.  001**

**Page 20 of 23**

an "abuse of process" claim outlined by defendant in *Curiano*) and repeats the various assertions in her affidavit (Plf. Opposition at 12-15).

As aptly pointed out by defendant, plaintiff fails to challenge in her opposition papers his statement that "New York does not recognize a claim for misuse of an order of protection" (Def. Reply at 13-14). Thus, the seventh cause of action should be dismissed.

As for the sixth cause of action sounding in "abuse of process," defendant argues that plaintiff has not demonstrated that he "used the process in a perverted manner to obtain a collateral objective," and that the Family Court orders of protection were obtained for the "intended purpose, to protect himself from Plaintiff" (*id.*). On the other hand, plaintiff alleges that these orders were obtained for the ulterior objective to evict her from his home, and the eviction action was commenced in the Housing Court to deny her of her due process rights, by "weaponizing the legal system" and abusing the order of protection by calling on the police to evict her from his Rye home, with the threat of jail for any non-compliance. Based upon such allegations and viewing them in a favorable light, it might be inferred that plaintiff is alleging that defendant used the process in "perverted manner to obtain a collateral objective."

While the true motive of defendant cannot be ascertained when he obtained the orders of the protection, the complaint (as amplified by plaintiff's affidavit and witnesses' affidavits, as discussed above) must be liberally construed in a CPLR 3211 (a) (7) motion to dismiss, and Plaintiff should be afforded every favorable inference. Accordingly, the sixth cause of action (abuse of process) should not be dismissed at this juncture.

The Eighth Cause of Action – Illegal Eviction

The complaint alleges that (1) plaintiff lived in defendant's home for more than 30 days prior to December 14, 2021 and regularly received her mail there; (2) she was entitled to the due

**159166/2022   BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No.  001**

**Page 21 of 23**

21 of 23

process of law, under RPAPL § 768 (1), as an occupant in a dwelling; and (3) defendant's action in getting a restraining order to prohibit her from returning to the dwelling, based on repeated lies to the court, resulted in an "illegal eviction" (Complaint, ¶¶ 111-115).

Defendant argues that RPAPL § 768 "does not operate to change a license or other non-possessory interest into a possessory interest;" and in this case, plaintiff was a "mere licensee" (not an occupant), and in any event, "Plaintiff cannot be restored to possession as the premises were sold" (Def. Brief at 23-24; citing statute and caselaw, including *Jiminez v 1171 Washington Ave., LLC*, 67 Misc3d 1222 [A] *9 [Civ Ct, NY County 2020]).

In her opposition papers, plaintiff does not challenge the statute or the caselaw cited by defendant. Instead, she asserts that she was "invited by Defendant to co-habit with him" and then he lied to the courts and tried to turn her into a "mere licensee" (Plf. Opposition at 15).

Without addressing the applicable law and the purported scenarios (as urged by the respective parties), it is apparent that this illegal eviction claim is substantively identical to the abuse of process claim because they are based on identical factual allegations. Notably, in her opposition, she now characterized this claim as "Abuse of Process – Misrepresentation" (*id.*). Thus, the illegal eviction claim (eighth cause of action) should be dismissed because it is substantively identical to and duplicative of the abuse of process claim (sixth cause of action).

**Conclusion**

Based upon the foregoing, it is hereby

ORDERED that defendant Vito Rocco Verni's motion to dismiss plaintiff Janet L. Bedin's complaint and all causes of action in their entirety (motion sequence no. 001) is granted only to the extent of dismissing the first (defamation of character), third (intentional infliction of emotional

**159166/2022 BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No. 001**

**Page 22 of 23**

22 of 23

distress), fourth (harassment, intimidation and assault), seventh (abuse of order of protection) and eighth (illegal eviction – abuse of process) causes of action of the complaint; and it is further

ORDERED that defendant is directed to serve an answer to the complaint within twenty days after service of this order with notice of entry; and it is further

ORDERED that the parties shall jointly submit via email a proposed preliminary conference order to Part 46 on or before October 4, 2024.

This constitutes the decision and order of the Court.

**8/21/2024**
**DATE**

**RICHARD G. LATIN, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | **X** | NON-FINAL DISPOSITION | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | DENIED | **X** | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**159166/2022   BEDIN, JANET vs. VERNI, VITO ROCCO**
**Motion No.  001**

**Page 23 of 23**

23 of 23